[No. 19738.    Department One.    July 7, 1926.]

## THE STATE OF WASHINGTON, *on the Relation of Rose S. Hagen, Plaintiff*, v. THE SUPERIOR COURT FOR THURSTON COUNTY, *Respondent*.[1]

[1] PROCESS (1)—CONSTITUTIONAL PROVISION—STYLE OF PROCESS. Constitution Art. IV, § 27, providing that all process shall run in the name of the state of Washington, has no application to the notice required by Laws of 1925, page 23, § 1, to be given by the director of licenses to a drugless healer in proceedings to revoke a license to practice.

[2] WITNESSES (92)—PRIVILEGE—ANSWER TENDING TO INCRIMINATE WITNESS. A proceeding to revoke a license to a drugless healer, for want of sufficient qualifications to practice, is not a criminal proceeding; and the act of 1925, page 23, providing for such proceedings is not unconstitutional in that it requires a licensee to give evidence against himself; since the statute does not require the licensee to give testimony tending to incriminate himself.

[3] CONSTITUTIONAL LAW (98)—EX POST FACTO LAW—NATURE— REVOCATION OF LICENSE TO PRACTICE MEDICINE. Laws of 1925, page 23, providing for the revocation of licenses to practice drugless healing, is not unconstitutional as an *ex post facto* law, as the constitutional restriction applies only to criminal laws.

[4] SAME (116)—REGULATION OF BUSINESS—DRUGLESS HEALING. Laws of 1925, page 23 is not unconstitutional in that it authorizes the director of licenses to revoke a lawfully granted license for practicing drugless healing, since it only authorizes the revocation of licenses obtained in violation of the act of 1919.

[5] SAME (125)—DUE PROCESS OF LAW—DEPRIVATION OF LIBERTY AS TO OCCUPATION. The act of 1925, page 23, authorizing the revocation of licenses to practice drugless healing does not authorize the taking of property without due process of law in violation of the fourteenth amendment to the Federal constitution.

Certiorari to review an order of the superior court for Thurston county, Wilson, J., entered December 21, 1925, sustaining the action of the director of li-

¹Reported in 247 Pac. 942.

censes in revoking a license to practice drugless heal-
ing.   Affirmed.

*Spencer Gray,* for relator.

*The Attorney General, E. W. Anderson* and *R. G.
Sharpe, Assistants,* for respondent.

FULLERTON, J.—The legislature, at its biennial ses-
sion of 1919, passed an act to regulate and license the
practice of drugless therapeutics in the state of Wash-
ington.   (Laws of 1919, ch. 36, p. 64) [Rem. Comp.
Stat., § 10112].   Generally, the act created a board of
examiners, empowered the board to pass upon the
qualifications of persons desiring to practice the art
named, and further empowered it to issue licenses to
so practice to those whom it finds to be qualified.   The
third section of the act prescribes the qualifications
necessary to be possessed by an applicant for a license.
Three different methods of showing qualifications are
therein provided.   An applicant is entitled to a license
if he can show: (1) that he has completed a residence
course of three entire sessions of thirty-six weeks each
at a chartered drugless school, the entrance require-
ment of which is a high school education or its equiva-
lent, and shall be able to pass an examination in cer-
tain designated subjects; (2) that he has a diploma,
issued prior to the passage of the act, by a chartered
drugless school, the entrance requirement of which is
a common school education or its equivalent, and has
practiced drugless healing for two years continuously
in this state; or (3) that he has no diploma, and has
been in the continuous practice of some one or more
of the drugless systems of healing, mentioned in the
act, for the past four years, two years of which shall
have been continuous practice in one place in this
state, and is able to pass an examination in certain

subjects named. Elsewhere in the act it is provided that any person practicing drugless therapeutics in the state without a license shall be guilty of a misdemeanor. By the act of 1921 [Laws of 1921, p. 12; Rem. Comp. Stat., § 10759], the legislature abolished the board of examiners created by the preceding act and vested its powers and duties in the department of licenses thereby created.

On November 4, 1922, the relator, Rose S. Hagen, made application to the department of licenses for a license to practice as a sanipractic physician in the state of Washington. The application was on a printed form which contained a number of questions which the applicant was required to answer. In answer to these, the applicant stated that she had attended the common schools of Duluth, Minnesota; that she was a graduate of the Lincoln High School; that she was a graduate of the American University of Sanipractic, having attended at the university for three entire sessions of thirty-six weeks each; that she graduated on June 30, 1922, and received the degree of sanipractic physician. Accompanying the application was a photographic copy of a diploma issued to her by the American University of Sanipractic of Seattle, showing her graduation as a sanipractic physician from that institution. The application was verified before a notary public, to the effect that she was the person named in the diploma accompanying the application, that she was the lawful holder thereof, that the same was procured, in the regular course of instruction and examination, without fraud or misrepresentation, and that her answers to the questions contained in the application were true and correct. On the strength of her showing, she was granted a license as a drugless physician "to practice Mechano Therapy within the following subjects: Anat-

omy, Symptomatology, Manual Manipulation, and Hydro Therapy."

In 1925, the legislature passed an act entitled "An Act providing for the revocation of licenses to practice drugless healing in certain cases, defining the powers and duties of certain officers, providing penalties for violations thereof, and declaring that this act shall take effect immediately."

The first section of this act reads as follows:

"Section 1. Whenever it shall come to the attention of the director of licenses that any applicant for a license to practice any form of drugless healing in this state under the provisions of Chapter 36, Laws of 1919, either with or without examination, presented with his application a diploma purporting to have been issued to such applicant by a drugless school, and a license was granted such applicant wholly or in part by reason of such diploma, and the director of licenses has reasonable ground to believe that the drugless school issuing such diploma, and the persons in charge thereof, have issued diplomas to persons who had not a high school education or its equivalent and who had not completed a residence course of three entire sessions of thirty-six weeks each in the school issuing the diploma, the director of licenses shall have the power to make and enter an order directed to such licentiate. setting forth the name of the licentiate, the date of his license and the name of the drugless school issuing the diploma upon which the license was based, and requiring such licentiate to appear before the director of licenses at his office in the city of Olympia at a time specified in the order, which shall not be less than twenty days after the service of a copy of such order upon him, and then and there to produce the diploma upon which his license was issued and produce and deliver to the director of licenses his license to practice drugless healing, and to testify under oath as to his educational qualifications at the time of his entering the school issuing the diploma and the length of his actual resident attendance at such school and all

other schools for attendance at which credits were claimed. The order provided for shall be served upon such licentiate and return of service made in the manner provided by law for the service and return of summons in civil actions.'' [Laws of 1925, p. 23, § 1.]

The second section of the act [Laws of 1925, p. 24] provides that if the licentiate does not appear in response to the order served upon him, the director of licenses shall have power to revoke his license; granting, however, to the licentiate the right to appear subsequently and show that his failure to appear was not wilful, but was occasioned by unavoidable accident, in which case the director is given power to withdraw the revocation and grant a hearing. The third section provides that the licentiate may appear at the hearing in person and by counsel, may call witnesses, and introduce documentary evidence to support his right to a license; and provides that the director may introduce controverting evidence. The fourth section reads:

''If at the conclusion of the hearing hereinabove provided for the licentiate shall have failed to establish to the satisfaction of the director of licenses that on the date of the issuance of his diploma he had a high school education or its equivalent and had in fact completed a residence course of three entire sessions of thirty-six weeks each in the school by which such diploma was issued, or any other schools for which credits were properly allowable, it shall be the duty of the director of licenses to revoke the license of the licentiate to practice drugless healing. In case the director of licenses does not revoke the license the same shall be returned to the licentiate.'' [Laws of 1925, p. 25.]

The fifth section [Laws of 1925, p. 25] gives the licentiate, in the case his license is revoked, the right to have the order of revocation reviewed by a writ of review sued out in the superior court of Thurston county; making the judgment of that court final.

Acting pursuant to the last mentioned statute, the director of licenses, on April 8, 1925, entered an order directed to the relator, reciting certain of the matters set forth in the first section of the act, and directing the relator to appear before him at his office in Olympia, on a date named in the order, and there show cause why the license to practice drugless healing, theretofore issued to her, should not be revoked. The order was duly served upon the relator and in response thereto she appeared at the time and place appointed. At the hearing, the relator freely answered such questions as were put to her under the direction of the director of licenses, from which it appeared that she was without the necessary qualifications for a license. Her application for a license brought her within the first of the subdivisions of section 3 of the act of 1919, p. 65, but her answers at the hearing disclosed that she was not a graduate of any high school, and that her attendance at the university issuing to her the diploma upon which she relied had not been for a term of three years of thirty-six weeks each, or for any period of time longer than three months preceding the granting of the diploma. On these facts appearing, the director revoked her license. The relator thereupon sued out a writ of review in the superior court of Thurston county, where the action of the director of licenses was reviewed; that court sustaining the action of the director.

The proceeding before us is on an original writ, sued out to review the judgment of the superior court. It is entertained because the relator urges the invalidity of the statute under which the director acted in revoking her license. (Laws of 1925, ch. 10, p. 23.)

[1] The first contention is that the provisions of the act which prescribe the method of bringing the

licentiate before the director of licenses are insufficient to comply with the constitutional requirement, and that, in consequence, the director had no jurisdiction of her person. The contention has its foundation in Art. IV, § 27, of the constitution, which provides:

"The style of all process shall be 'The State of Washington,' and all prosecutions shall be conducted in its name and by its authority."

The statute, it will be remembered, provides that, whenever it shall come to the attention of the director of licenses that an applicant for a license to practice drugless healing presented with his application a diploma purporting to have been issued to the applicant, on which the license was granted wholly or in part, and the director has reasonable ground to believe that the drugless school issuing the diploma has issued diplomas to persons not having the necessary educational requirements, he may enter an order to that effect, and cause the licentiate to be brought before him by serving a copy of the order upon the licentiate. There is no requirement that the notice shall be styled "The State of Washington," and the argument is, that this is not sufficient to constitute due process of law. But we cannot think the constitutional provision has application to proceedings of this sort. A process, in its ordinary sense, is a judicial writ, issued out of a court, expressing the command of a court, which the person to whom it is directed is bound to obey. While it is sometimes given a more general signification, this court has confined its meaning to the more restricted sense. We have held that a summons in a civil action is not a process, upholding the statute authorizing its issuance by an attorney, even before a complaint is filed with the court; *McMaster v. Advance Thresher Co.*, 10 Wash. 147, 38 Pac. 670. We have also expressly

declared that such a summons is not a process. *Wag-nitz v. Ritter,* 31 Wash. 343, 71 Pac. 1035; *Spokane Merchants Ass'n v. Acord,* 99 Wash. 674, 170 Pac. 329, 6 A. L. R. 835. It would seem manifest that, if process is not required in a civil action to bring a party before a court, it is not so required in a proceeding of this nature. · Moreover, it is the general rule that a ·constitutional requirement of this sort applies only to judicial proceedings, not to proceedings had in the executive departments of the state. 26 R. C. L., p. 1265, par. 4. We cannot conclude, therefore, that the statute is objectionable for the reason here stated.

[2] The next contention is that the act is unconstitutional, because it compels a licentiate to testify against himself in a proceeding criminal in its nature. But with this contention we are unable to agree. Aside from the fact that we cannot concede that this is a criminal proceeding (*State Board of Medical Examiners v. Jordan,* 92 Wash. 234, 158 Pac. 982), the statute nowhere provides that the licentiate shall testify to matters tending to incriminate himself. In this proceeding, as in all others, the licentiate may claim his privilege, and can rightfully refuse to answer any question when his answer might tend to his incrimination. The statute, it is true, provides that, if the licentiate shall fail or refuse to comply "in any particular" with the order of the director, the director shall have power to revoke his license. But this does not render the statute obnoxious for the reason here contended. It but fixes the degree of evidence upon which the director is empowered to act; it does not compel the licentiate to give incriminating evidence against himself. There is nothing in the case of *Boyd v. United States,* 116 U. S. 616, relied upon by the relator, that militates against the conclusion we here

reach.  That was a criminal proceeding, and it was held that to compel the defendant to produce his private papers for the purpose of proving the charge against him was to compel him to be a witness against himself.  Here, the procedure is not criminal.  The licentiate stands on the plane of a party to, or witness in, any civil procedure; he may answer or refuse to answer incriminating questions as suits his desires.

[3]  The next contention is that the law is *ex post facto* in its effect.  But the constitutional provision relating to *ex post facto* laws applies only to legislation concerning crimes.  It has no application to a proceeding to revoke a license to practice drugless healing obtained in violation of the statutes authorizing their issuance.  The case of *Johannessen v. United States,* 225 U. S. 227, presents a parallel to the question involved.  That was a proceeding under the United States statutes (34 Stat. at Large 596) to cancel a certificate of citizenship, granted to an alien long prior to the passage of the act referred to, on the ground that it had been fraudulently and illegally procured.  One of the contentions was, that the law was invalid because *ex post facto*.  The court, speaking to the question, after saying that an alien had no moral or constitutional right to retain the privileges of citizenship, if an imposition had been practiced upon the court without which the certificate could not and would not have been issued, used this language:

"Finally it is insisted that, if retrospective in form, the section is void, as an *ex post facto* law within the prohibition of Art. I, § 9 of the Constitution.  It is, however, settled that this prohibition is confined to laws respecting criminal punishments, and has no relation to retrospective legislation of any other description.  Cooley's Const. Lim. (6th ed.), 319; *Calder v. Bull,* 3 Dall. 386, 390; and Rose's Note thereon.  The

act imposes no punishment upon an alien who has previously procured a certificate of citizenship by fraud or other illegal conduct. It simply deprives him of his ill-gotten privileges. We do not question that an act of legislation having the effect to deprive a citizen of his right to vote because of something in his past conduct which was not an offense at the time it was committed would be void as an *ex post facto* law. *Cummings v. Missouri,* 4 Wall. 277, 321; *Ex parte Garland,* 4 Wall. 333, 378. But the act under consideration inflicts no such punishment, nor any punishment, upon a lawful citizen. It merely provides that, on good cause shown, the question whether one who claims the privileges of citizenship under the certificate of a court has procured that certificate through fraud or other illegal contrivance, shall be examined and determined in orderly judicial proceedings. The act makes nothing fraudulent or unlawful that was honest and lawful when it was done. It imposes no new penalty upon the wrongdoer. But if, after fair hearing, it is judicially determined that by wrongful conduct he has obtained a title to citizenship, the act provides that he shall be deprived of a privilege that was never rightfully his. Such a statute is not to be deemed an *ex post facto* law.''

In *Reetz v. Michigan,* 188 U. S. 505, the question involved was the validity of a statute of the state of Michigan requiring all practitioners of medicine and surgery to obtain from the board of registration in medicine thereby created a certificate of registration. Reetz was a practitioner of medicine prior to the passage of the act, and failed to comply with its requirements. For this failure he was convicted in the courts of Michigan, and sought in the cited case to have the judgment of conviction set aside, one of his contentions being that the law was *ex post facto* in its effect. Answering this question, the court said:

''It is further insisted that having once engaged in the practice and having been licensed so to do, he had

a right to continue in such practice, and that this statute was in the nature of an *ex post facto* law. The case of *Hawker v. New York,* 170 U. S. 189, is decisive upon this question. This statute does not attempt to punish him for any past offence, and in the most extreme view can only be considered as requiring continuing evidence of his qualifications as a physician or surgeon. As shown in *Dent v. West Virginia,* 129 U. S. 114, there is no similarity between statutes like this and the proceedings which were adjudged void in *Cummings v. Missouri,* 4 Wall. 277, and *Ex parte Garland,* 4 Wall. 333.''

[4] The relator further argues in this connection that the act is void, because it permits the director of licenses to revoke the license of a licentiate which was lawfully granted. This contention is based on the literal wording of the first section of the act of 1925, *supra.* As the relator interprets the language of this section, it permits the director of licenses to revoke a license issued under the second subdivision of section three of the act of 1919, *supra,* although the licentiate, at the time of its issuance, had the qualifications prescribed by that subdivision. Since the relator was licensed under the first subdivision of the act, the question she seeks to raise is open to her only on the principle that the entire act is thereby rendered void. This we would be inclined to doubt, even were we to conclude that her interpretation of the statute is correct. But that the statute is void we cannot concede. A reading of the entire act makes it clear that the legislature intended only to authorize the director of licenses to revoke licenses obtained in violation of the provisions of the act of 1919, *supra,* not licenses lawfully obtained thereunder. So interpreted, it is not violative of any constitutional provision.

[5] The fourth contention is that the act is violative of the fourteenth amendment to the constitution

of the United States. The citations we have made from the highest federal court we think sufficiently answer the objection, but in addition thereto we cite the case of *Butcher v. Maybury*, 8 Fed. (2d series) 155, where the precise question is determined contrary to the relator's contention.

The merits of the controversy are possibly not before us. *Henry v. Thurston County*, 31 Wash. 638, 72 Pac. 488; *Gies v. Broad*, 41 Wash. 448, 83 Pac. 1025; *Hall v. Cowen*, 51 Wash. 295, 98 Pac. 670; *Malette v. Spokane*, 77 Wash. 205, 137 Pac. 496, Ann. Cas. 1915D 225, 51 L. R. A. (N. S.) 686. We have nevertheless examined the record and find no error in the conclusion of the trial court on the facts. The evidence, to our minds, very conclusively shows that the license was procured by the relator by the practice of the grossest of frauds.

The alternative writ is quashed, and a peremptory writ denied.

TOLMAN, C. J., HOLCOMB, ASKREN, and BRIDGES, JJ., concur.