[Crim. No. 2041.   Second Appellate District, Division One—April 13, 1931.]

THE   PEOPLE,   Respondent,   v.   MAJOR   BROYLES,
Appellant.

M. H. Broyles for Appellant.

U. S. Webb, Attorney-General, Frank Richards, Deputy
Attorney-General, Buron Fitts, District Attorney, and
Frank Stafford, Deputy District Attorney, for Respondent.

HOUSER, J.—Defendant appeals from a judgment of conviction rendered against him and two others for the commission of each of the crimes of burglary, robbery and grand theft. He also appeals from the order by which his motion for a new trial was denied.

The first reason assigned by appellant for reversal of the judgment is that the evidence was insufficient to sustain the verdict rendered by the jury.

The record herein discloses the fact that the several crimes of which the defendants were convicted were accomplished by the breaking into a warehouse, "holding up" the watchman thereof, the felonious taking from his custody of 128 cases of cigarettes, together with the likewise felonious taking of an automobile truck in which the stolen cases of cigarettes were transported from the warehouse to a point where the defendants were arrested.

As to the sufficiency of the evidence to support the verdict against appellant, it appears beyond question that the *corpus delicti* of each of the several crimes of which defendant was charged was established. Although the defendants went to trial on a plea of "not guilty", one of them frankly admitted his part in the commission of each of such several offenses, and the other defendant was identified as another of the persons who assisted therein. Among other facts, it was shown that three men were concerned in the perpetration of each of the crimes in question; that on the night when said crimes were committed and at a time approximately two or three hours preceding their commission, appellant was in the company of the defendant who admitted his guilt, and the other defendant who was identified as one who was present and who took part in committing each of the offenses of which all the defendants were accused; that after the said crimes had been committed, and while the 128 cases of cigarettes were being transported in the automobile truck from the warehouse from which they were stolen, a roadster automobile which was owned by appellant was seen closely following the said automobile truck; that when the latter was stopped adjacent to the curb of the sidewalk the roadster automobile also stopped, and the driver of each of said automobiles "turned out its lights"—following which a witness "observed a man of

medium build . . . get out of the seat of the truck; . . . he headed down the street . . . towards the roadster that had parked at the curb''. The witness ''also observed a man get out of the truck from behind the steering wheel, . . . and the man was dressed in black,—in dark clothes, and he headed towards the roadster which had parked at the curb. . . . He was a medium size man which resembled the defendant (appellant) in size and actions.'' Another witness testified that at this point the two men got into the roadster which was then driven away from where it had been stopped near the truck. In a few minutes the roadster, which then, as before, contained three men, returned to the point where the truck was parked and, after passing it at a rate of about five miles per hour, ''made a U turn and parked about fifteen feet behind the truck at the curb''. Appellant and one of the defendants then alighted from the roadster and ''started on kind of a dog trot'' in the direction of the rear of the truck. When they were about six feet ahead of the roadster, the remaining defendant shouted, ''Get the truck and let's go!'' Further testimony of the witness (who was a policeman) includes the following:

''I waited a couple of seconds until the defendants John Pettigrew and Major Broyles (appellant) got within about four foot of the rear of the truck. I stepped out in plain view in uniform and I told them to stick up their hands. . . . Practically at the same time the defendant Lucius Waters said, 'Come on, there is,'—and I didn't catch the last word. . . . The two defendants, Major Broyles (appellant) and John Pettigrew, whirled around and ran for the Chrysler (the roadster). . . . I hollered at them; they kept running—''

The policeman then shot at appellant, who ''threw both hands in the air and screamed, and kind of fell in the seat of the Chrysler'' (the roadster). The defendant Pettigrew, who had gone with appellant toward the rear of the truck, ''took cover behind the rear fender of the Chrysler roadster''. And the policeman ''told them to come out and put up their hands''. The policeman further testified: ''None of them came out, and I told them again to come out with their hands up, and none came out, and I waited a few seconds, and I observed the defendant John Pettigrew raise

his head above the rear fender and take a look at me. I shot through the rear glass from the front. . . . He ducked back. . . . At this time I heard voices which informed me that they were surrendering, not to shoot any more. I told the defendants to come out with their hands up, which they did. . . . I lined them up on the sidewalk on the south side of Seventh street, . . . with their hands up in the air, with their backs to me, . . . ''

On being searched, a ''gun'' was found in the possession of one of the defendants, and three other ''guns'' were found on the floor of the roadster,—one of which, according to the testimony given by two different witnesses, appellant in effect admitted was his property.

■ Although in opposition to the foregoing statement of a part of the testimony presented by the prosecution, considerable evidence was adduced in behalf of appellant, which in substance not only was a general denial of his guilt, but which also was explanatory of his presence at the place where the arrest of the defendants occurred, the conclusion from the evidence whether appellant was guilty of the several charges preferred against him rested with the jury, —subject only in that regard to a later determination by a reviewing court as to the sufficiency of the evidence to justify a verdict of ''guilty''.

Without regard to evidence presented in behalf of the innocence of appellant, it well might be argued that, judged solely by the evidence produced against him, no conclusion other than that of his guilt could result. No useful purpose would be served by a discussion based upon the evidence to which reference has been had. It suffices to say that, in the opinion of this court, it was sufficient to support the verdict returned by the jury.

■ Appellant also has presented for the consideration of this court many other specifications of alleged error. He utterly fails to favor this court with either argument or authority to sustain the position which he assumes as to either or any of such alleged errors. The specification by appellant of each of such asserted errors is but a mere outline of any legal point which possibly may exist in his favor, and is but a general statement by appellant that some incident which occurred on the trial of the action, or some ruling by the trial court on either the admission or the re-

jection of certain evidence, or the refusal by the trial court to give to the jury a specified instruction which was offered by defendant,—constituted error. None of such specifications of error is accompanied by even the slightest suggestion of a reason as to why it either produced any damage to defendant or had any harmful effect upon the presentation of his defense. ■ It is a universal rule that mere error is of no consequence, unless it also appear that the appellant has been prejudiced thereby; and the duty of discovering possible prejudicial error and directing the attention of the appellate tribunal thereto, together with appropriate reasons or judicial precedent in support of his contention, rests with the appellant. Unless that be done, the alleged error must be deemed frivolous, or made without foundation, and, on reflection by appellant, to have been abandoned by him. (2 Cal. Jur. 732, and authorities there cited.)

It is ordered that the judgment and the order by which defendant's motion for a new trial was denied be and they are affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 27, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 11, 1931.