[L. A. No. 13067. In Bank.—April 4, 1933.]

ETHEL O. BRADLEY, Respondent, v. J. H. BUTCHART et al., Appellants.

J. H. BUTCHART, Cross-Complainant and Appellant, v. ETHEL O. BRADLEY et al., Cross-Defendants and Respondents.

BEN AMES et al., Cross-Complainants and Appellants, v. ETHEL O. BRADLEY et al., Cross-Defendants and Respondents.

Bernard Potter, Leonard Thomas and H. B. Cornell for Appellants.

Culbert L. Olson, Freston, Mulroney, Nilsson & Files and Freston & Files for Respondents.

CURTIS, J.—This is an action wherein the plaintiff, alleging that she is the owner and entitled to the possession of certain real property, to wit: lots 2, 3, and 4, Norwood Terrace, Los Angeles, and that the defendants have no right, title or interest in said property, sought a decree quieting her title to said property against any claim on the part of the defendants. Her claim of ownership is predicated upon a chain of title consisting of a conveyance in the form of a grant deed from Frank O. Dalton, Roy A. Dalton and Alice Dalton to the English Realty Corporation under date of September 29, 1925, recorded on September 30, 1925; a conveyance from the English Realty Corporation in the form of a grant deed to Harriet W. English dated January 7, 1926, signed by Edward C. English, as president. and P. M. Jones, as secretary of the corporation, and under the seal of the corporation, recorded February 16, 1926, and a deed of conveyance from Harriet W. English to Ethel O. Bradley, under date of July 18, 1928, and recorded July 19, 1928. Defendants J. H. Butchart, Ben Ames and Isobel K. Ames filed answers denying plaintiff's ownership. By way of a further and separate answer defendants Ben Ames and Isobel K. Ames, setting up the fact that they were creditors of the English Apartment Company, alleged that the English Apartment Company and the English Realty Corporation were the *alter ego* of Edward C. English, and that Edward C. English caused said deed from the English Realty Corporation to his wife, Harriet W. English, dated January 7, 1926, and recorded February 16, 1926, to be executed by said corporation without any consideration and with the intent to hinder, delay and defraud his creditors. Defendant J. H. Butchart, claiming as a creditor of the English Apartment Company, and Edward C. English personally, set up the same defense. These defendants also filed cross-complaints in which they set forth the above matters and in addition alleged fraud on the part of each and every person or corporation in any

manner connected with the financial transactions involving said property. There were named as cross-defendants by said cross-complaint the following parties: Edward C. English, Harriet W. English, E. E. Alexander, Ethel O. Bradley, and C. L. Olson, attorney for Ethel O. Bradley and who had acted as attorney for Harriet W. English in the transactions involving the property here in controversy. Upon the trial of the case, judgment was made and entered in favor of the plaintiff quieting her title to said lots, and from this judgment the defendants appeal.

The facts of the case, briefly stated, are as follows: On December 22, 1922, Edward C. English and Harriet W. English, his wife, entered into a contract settling their property rights, whereby certain community property became the sole and separate property of Mrs. English and certain other community property became the separate property of Mr. English. At the time of the agreement, Mrs. English had separated from her husband and had filed a suit asking for a separate property settlement. Under this agreement there was conveyed to Mrs. English by grant deed from Mr. English the residence property situated at 124 Fremont Place, Los Angeles, of the approximate value of $65,000, the furniture and furnishings of the Fremont Place house, 100 shares of the Western Electric Products and 50 shares of Western State Bank. The suit by Mrs. English was thereupon dismissed and the parties continued to live together until April, 1926, when Mrs. English separated from her husband. Mr. English was a prosperous contractor and Mrs. English's share of the community property, which by the carrying out of the terms of the agreement became her sole and separate property, was of the value of more than $100,000. All of the proof is to the effect that this was a *bona fide* settlement and division of the property rights and interests of the parties thereto, and it is to be noted that it was entered into at a time when it does not appear that Edward C. English had any creditors and at least two years prior to the time he became interested in the apartment house deal by which appellants claim to have become his creditors.

In 1925 Edward C. English became interested in a plan to build an "Own-your-own" apartment on the property in controversy, i. e., lots 2, 3 and 4, Norwood Terrace, Los

Angeles, and organized the English Apartment Company with the object of carrying this plan into effect. It seems that defendant Butchart and defendant Ben Ames had each previously entered into a contract with parties by the name of Zaiser & Killen, Butchart having paid $9,500 and Ames $11,500, under agreements to purchase from Zaiser & Killen apartments in a proposed apartment building to be erected on the Ruth Roland property at the corner of Wilshire Boulevard and Normandie Street, being an entirely different piece of property from that involved herein. Dalton Brothers, who owned the property here in controversy, had given an option on this said property to Zaiser & Killen. The latter assigned said option to Mr. English and in some deal between the English Apartment Company, Zaiser & Killen and the appellants Butchart and Ames, the English Apartment Company took over the contracts between appellants and Zaiser & Killen, and the amounts paid over by appellants to Zaiser & Killen were accepted as payment on apartments to be erected by English on lots 2, 3 and 4 of Norwood Terrace. English found that he was unable to raise sufficient money to finance the purchase of these lots without assistance and approached his wife with the idea that if she would put up her separate property, in addition to certain property which he also would put up, the Citizens National Trust and Savings Bank would loan him the sum of $170,000. Mrs. English at first refused, but after being urged by her two sons and after consulting her attorney, Mr. C. L. Olson, she consented to said arrangement upon the understanding that she should receive a promissory note in the amount for which she would be liable to the bank, together with a trust deed upon the lots to be purchased as her security. She thereupon signed a ninety-day promissory note, together with her husband, Edward C. English, and his brother, Richard C. English, to the Citizens National Trust and Savings Bank for $170,000, and to secure payment of this note hypothecated to the bank her sole and separate property consisting of the real property located at 124 Fremont Place, Los Angeles, a chattel mortgage on its furniture and furnishings, 100 shares of Electric Products Corporation (formerly Western Electric Products) and 50 shares of Bank of America (formerly Western State Bank). At the same time Mr. English pledged with the

bank, as security for this note, 100 shares of stock of Electric Products Corporation, 10 shares of stock of Citizens Savings Bank of Champaign, Illinois, and 39 bonds of Elks Building, Champaign, Illinois. In the meantime the English Realty Corporation had been organized by English for the purpose of holding title to the property. Nine thousand dollars which had been paid by Zaiser & Killen for the option on the property had been credited to English on the purchase price of these lots; he had previously paid an additional sum of $31,000; and $80,000 out of the money loaned by the Citizens Bank was paid as the purchase price, making the total purchase price of the property $120,000. The property was thereupon conveyed to the English Realty Corporation by the Daltons. The sum of $81,542 of the amount borrowed from the Citizens Bank was held intact by the English Realty Corporation in the said bank in connection with plans for the financing of the building on the lot.

At the same time a promissory note for $170,000 was executed and delivered to Mrs. English, and a deed of trust covering these said lots (subject to any mortgages or deeds of trust to secure a first mortgage bond issue of $650,000 and a general mortgage bond issue of $100,000, and the cost of any furniture to be placed on the premises not exceeding $180,000), in which she was named as beneficiary and C. L. Olson, her attorney, was named as trustee, was executed by the English Realty Corporation, signed by Edward C. English, as president, and P. M. Jones, as secretary, and bearing the seal of the corporation. At the request of Mr. English this trust deed was withheld from recordation by reason of the fact that he was engaged in plans for the financing of the apartment building by means of a contemplated first mortgage bond issue of $650,000, and a general mortgage bond issue of $100,000, to be handled by Bailey Brothers, and he did not wish the trust deed to be recorded until the other encumbrances had been placed of record.

Apparently the plans of the English Realty Corporation for financing the building by said bond issue did not materialize and the bank sold the 100 shares of stock of Electric Products Corporation pledged with it by Mrs. English for $20,141.68 and also the 100 shares of stock of Electric Products Corporation pledged with it by Mr.

English for the same amount and applied the total amount received of $40,283.36 on the note for $170,000 held by it, leaving a balance due of $129,716.64. A renewal note was signed by Edward C. English, Harriet W. English and Richard C. English. Later in March, 1926, the $81,542 which had been held intact was applied on the indebtedness, and a new note was made for the balance, being $48,174.64, bringing the interest up to date.

On January 5, 1926, a written agreement was entered into between English Realty Corporation, Edward C. English and Harriet W. English. This agreement, after setting out the facts that the note to the Citizens National Trust and Savings Bank had not been paid, that over $48,000 remained due upon said note, that said English Realty Corporation was unable to pay the same to obtain the release and return to Harriet W. English of the property conveyed and hypothecated by her with the bank to secure said note, and stating that a sale under foreclosure of the trust deed held by her would not furnish sufficient money, even after the application to said debt of the property of Edward C. English still held by the bank, to pay said indebtedness to the bank to repay to Harriet W. English the value of her shares of stock of Electric Products Corporation sold by the bank, provided that the English Realty Corporation should convey to Harriet W. English by grant deed title to said property (lots 2, 3 and 4, Norwood Terrace) and Harriet W. English agreed to cancel the note and trust deed held by her and also to save harmless the said English Realty Corporation, Edward C. English and Richard C. English from any liability on said indebtedness to the bank. This agreement was signed by Edward C. English as president of the English Realty Corporation. Thereafter, the English Realty Corporation conveyed these lots to Harriet W. English by deed of conveyance dated January 7, 1926, signed by Edward C. English, as president, and P. M. Jones, as secretary, and bearing the seal of the English Realty Corporation, which deed was recorded on February 16, 1926. It will be noted that at the time of this conveyance in consideration of the cancellation of the note and trust deed held by her, Harriet W. English still had hypothecated with the bank as security for the indebtedness of the English Realty Corporation her residence property at 124 Fremont

Place, together with its furniture and furnishings, and her 50 shares of bank stock, and that she was entitled to credit of over $20,000 for the shares of stock of the Electric Products Corporation previously sold by the bank.

Thereafter Mrs. English conveyed these lots to the Citizens Bank to secure the balance of the indebtedness due from her to the bank. In consideration of this conveyance the bank reconveyed to her the property pledged by her, being her residence property and her bank stock and satisfied and discharged its chattel mortgage upon her furniture, and a supplemental declaration of trust was made by the bank substituting these lots as security for her indebtedness. The deed from Mrs. English to the Citizens Bank was recorded February 16, 1926. Subsequently the other property pledged by Mr. English was sold by the bank and the proceeds of the sale applied on said indebtedness. Nothing further was paid and on December 1, 1927, there was due $46,264.20. Mrs. English was unable to pay the amount due and on February 27, 1928, a notice of default was served on her by the bank, and the property was advertised for sale by the bank. Mrs. English had been attempting to sell the property since 1926, but had not received an acceptable offer. It was apparent that she would lose her equity in the property unless she could forestall this sale by the bank. She thereupon called upon her attorney, C. L. Olson, to attempt to save something for her out of the property. Unless she was able to save something she would be entirely out for the value of her shares of stock of Electric Products Corporation, previously sold by the bank, of the value of over $20,000. Mr. Olson refinanced the loan by putting up $8,333 of money belonging to his sister, Ethel O. Bradley, plaintiff herein, and himself and securing a loan of $40,000 from the Merchants National Trust and Savings Bank on his own personal note, putting up the property here involved as security for said loan. These amounts were paid to the Citizens Bank in full satisfaction of the indebtedness due it and said bank reconveyed to Mrs. English said lots 2, 3 and 4, Norwood Terrace. In the meantime, Mrs. English had conveyed said property to Ethel O. Bradley under a written agreement that after the payment of the principal sum due, the payment of all taxes and assessments on the property, the costs expended in any action to quiet title,

and any commissions and expenses of a sale, the net overplus received by a sale of the property by Ethel O. Bradley should be divided equally between her and Harriet W. English, it being agreed that the property would not be sold for less than sufficient to pay Harriet W. English the sum of $20,000. Thereafter, and after the commencement of this action, by agreement of the parties to said agreement, the lots were sold on February 19, 1929, to Wm. M. Davey for $73,000 in cash and some equities in real property which were encumbered. Under this agreement the purchaser paid $13,000 in cash and assumed the payment of notes for $60,000, secured by a first trust deed on the property here involved, which notes were subsequently paid off by him. After payment of all expenses as provided for by the agreement between Ethel O. Bradley and Harriet W. English, there remained a surplus of $19,116.22 to be divided equally between them, Mrs. English having previously waived the provision that the sale must net her $20,000. It is apparent, therefore, at the termination of the transactions involving this property that Harriet W. English by the hypothecation of her sole and separate property with the Citizens Bank for the loan of $170,000 for the purchase of the property in controversy, and having lost her shares of stock of Electric Products Corporation by the sale of said stock by the bank, which shares were sold for over $20,000, in fact sustained a loss of over $10,000.

There should also be included in a summary of the facts a statement that subsequent to the execution of the grant deed of January 7, 1926, by the English Realty Corporation to Harriet W. English, Mr. English continued to spend at least part of his time in the little real estate office located on the property. His presence there was explained by one of his sons as being to help his sons who were engaged in the contracting business also. It should also be stated that subsequent to the execution of said deed by the English Realty Corporation to Harriet W. English, Edward C. English in April, 1927, executed a trust deed to the Title Insurance and Trust Company as security for a loan of $110,000, and subsequently another deed of trust on lots 3 and 4 to the same company as trustee in favor of Richard C. English and Edward C. English, doing business as a copartnership, for the sum of $63,000. Before suit to quiet title was com-

menced these deeds were released by the parties holding the same.

Upon the foregoing facts and the proof produced in support thereof, the trial court decided all of the issues in favor of the plaintiff and the cross-defendants, and gave judgment accordingly. Epitomized, the findings of the trial court are (1) that the plaintiff is the owner in possession of and entitled to the possession of the real property to quiet the title of which this suit was brought; (2) that defendants, J. H. Butchart, Ben Ames and Isobel Ames, have not any title or interest in said real property; (3) that the English Realty Corporation, a corporation organized for profit, is a one-man corporation dominated and controlled by Edward C. English and the acts of said corporation are the acts of Edward C. English; (4) that the property settlement entered into on December 22, 1922, between Edward C. English and Harriet W. English was a *bona fide* agreement free from any fraud or fraudulent intent, whereby Harriet W. English received as her sole and separate property certain property in lieu of her claim to any interest in certain other community property and in lieu of her claim for separate maintenance; (5) that the deed from the English Realty Corporation, whereby title to the property was conveyed to Harriet W. English, was not a voluntary conveyance but was made for good, valuable and adequate consideration given and paid by Harriet W. English in the handling of her sole and separate property, and was made in good faith and without any intent to injure, hinder, delay or defraud any creditors of Edward C. English, English Realty Corporation, or the English Apartment Company; (6) that the conveyance from Harriet W. English to Ethel O. Bradley was made in good faith and for a good, valuable and adequate consideration and without any purpose or intent to injure or hinder or delay or defraud any creditor of Edward C. English, English Realty Corporation, or the English Apartment Company; (7) that the conveyance of said property by Harriet W. English to the Citizens National Trust and Savings Bank in February, 1926, as security for the performance of an obligation due the bank, was made in good faith and for good and valuable consideration and without any purpose on the part of anyone to injure, hinder, delay or defraud any creditor or

creditors of Edward C. English, English Realty Corporation or the English Apartment Company. The court further found that Edward C. English did execute certain deeds of trust to the Title Insurance and Trust Company and that said deeds of trust were recorded subsequent to the conveyance from the English Realty Corporation to Harriet W. English, but found that said execution and recording was done by Edward C. English in an attempt to secure funds to purchase said property back from Harriet W. English, which attempt failed and said trust deeds were a nullity, and that they were not executed in the exercise of any control of the legal or equitable title to said property, and were not executed or recorded with the knowledge or consent of said Harriet W. English and did not affect her title. The court likewise found that ''the conclusions of law and judgment must be the same, in view of the findings herein, regardless of any finding as to whether 'the defendants J. H. Butchart, Ben Ames and Isobel K. Ames' were creditors of Edward C. English on January 7, 1926, the date on which the real property referred to in the complaint was conveyed to Harriet W. English by the English Realty Corporation'', and that ''the conclusions of law and judgment must be the same in view of the previous findings herein, regardless of any finding whether said Edward C. English was insolvent at the time of the conveyance by English Realty Corporation to Harriet W. English but it does not appear by any satisfactory evidence that Edward C. English was insolvent at that time. The evidence does show that after the conveyance of said property by the English Realty Corporation to Harriet W. English, the said Edward C. English still owned other property, the value of which was not established.''

The two main contentions made by appellants are, (1) that the evidence is insufficient to support the findings and decision of the court, and (2) that the deed from the English Realty Corporation to Harriet W. English was not properly executed by the corporation, there being no regularly called meeting of the directors and no resolution formally passed authorizing the execution of said deed, and, therefore, the motion for a nonsuit, based upon the theory that there has been a failure to establish plaintiff's ownership to said property by a valid chain of title, should have been granted.

■ Appellants recognize the rule that findings based on conflicting evidence will not be disturbed, but claim that in the instant case the testimony is so inherently improbable that no conflict in fact exists. We cannot agree with this view of the evidence for we are of the opinion that a real and substantial showing was made by the plaintiff which amply warranted the trial court in arriving at the conclusion that plaintiff was entitled to a decree quieting her title to the property against any claims of the appellants. The testimony of the various witnesses for the plaintiff with reference to the transactions involved in the handling of the property in controversy seems to us probable and worthy of credence and we are satisfied with the conclusion reached by the trial court. It is true that evidence was produced by the appellants which casts some doubt upon the story of the transactions as pictured by the plaintiff's witnesses, and which tended to some slight degree to challenge the truth of some of the testimony of plaintiff's witnesses, but this is necessarily true of every case in which the issues are controverted, and the trial court having weighed the evidence and resolved any contradictions and inconsistencies in favor of the plaintiff, its determination is final.

· ■ We think there is no question but that the property settlement entered into between Edward C. English and Harriet W. English in 1922 long prior to the time any controversy arose between Edward C. English and his creditors was a perfectly legitimate, *bona fide* transaction. The trial court expressly found and we think its conclusion is undoubtedly correct. As a result of said agreement, Harriet W. English became the owner, as her sole and separate property, of certain property over the value of $100,000 which she thereafter, upon solicitation by her husband, hypothecated with the Citizens National Trust and Savings Bank to secure a loan to her husband of $170,000 to enable him to purchase lots 2, 3 and 4 of Norwood Terrace for the purpose of erecting an own-your-own apartment house thereon. The deed to said property was taken in the name of the English Realty Corporation and this hypothecation by her of her sole and separate property and her execution with her husband and his brother of the note to the Citizens Bank were good and valuable considerations for the promissory note for $170,000 and for the trust deed

executed in her favor by the English Realty Corporation. We are further of the opinion in view of the testimony of P. M. Jones, secretary of the corporation, that the execution of said deed of trust was properly authorized by the corporation.

The cancellation of this note and the failure of Mrs. English to foreclose under the deed of trust was a good and valuable consideration from Mrs. English for the grant deed by which the English Realty Corporation conveyed said property to Harriet W. English, which said grant deed was properly signed by Edward C. English, as president, and P. M. Jones, as secretary, and bore the seal of the corporation, thus being *prima facie,* evidence of a conveyance of title. At the time of the giving of the grant deed to Mrs. English in lieu of the promissory note and trust deed, there was still over $48,000 due to the Citizens Bank and she had an interest of over $20,000 in the property by reason of the previous sale of her shares of stock of Electric Products Corporation by the bank, and her residence property worth $65,000, her furniture and furnishings valued at $15,000, and her shares of bank stock were all liable for the debt still remaining due to the bank. Although appellants attempted to prove at the trial that the grant deed was given not as an absolute conveyance but as security for the obligation to her, the trial court expressly found that the grant deed was made and executed as an absolute conveyance, and as we view the evidence this conclusion was a correct one. It is true that the original purchase price of the property was $120,000 and that the actual amount of money still due the bank, which Mrs. English assumed and for which her property stood pledged, amounted to $48,000, which, with the $20,000 from the sale of her shares of stock by the bank, made a total of $68,000, but there is testimony in the record that the value of the property had materially depreciated since the purchase of the property, and it is also a well-known fact that very often under forced sale the real value of the property cannot be obtained. The trial court also found that it did not appear by satisfactory evidence that Edward C. English was insolvent at the time of this transfer of the property to Mrs. English, and also that the evidence does show after this conveyance to Mrs. English that Edward C. English still owned other property. We find

from a review of the record that this finding is correct.

It is well settled that a pre-existing debt is sufficient consideration for a transfer of property and such a transfer cannot be attacked by one creditor simply because the transferor has seen fit to give a preference to another creditor, even though the debtor thereby renders himself insolvent. (*Foster* v. *Foster*, 123 Cal. App. 1 [10 Pac. (2d) 796].) It should perhaps be here noted that the appellants, if creditors, were only general creditors and had no lien or interest in the particular property here in controversy. It was not until April, 1928, that the appellants Ben Ames and Isobel K. Ames obtained judgment against English Apartment Company and not until June, 1928, that appellant Butchart obtained judgment against the English Apartment Company and Edward C. English personally upon his guaranty of the obligation of the English Apartment Company, and subsequently made levies upon this particular property.

In view of the fact that it is apparent that a valuable consideration existed for the conveyance by the English Realty Corporation to Harriet W. English of the property here involved, any evidence that the corporation did not by proper resolution authorize said conveyance would be immaterial for the reason that regardless of whether there was proper authorization such transfer, properly signed by the officers and bearing the seal of the corporation, would be valid by virtue of the fact that the corporation itself would be estopped to deny the validity of the authorization and it follows, of course, that if the corporation is estopped, in the absence of fraud, the estoppel likewise applies against the creditors of the corporation. *Wood Estate Co.* v. *Chanslor*, 209 Cal. 241, 250 [286 Pac. 1001], is very similar in this respect to the instant case and definitely settles the rule in this regard.

We likewise fail to find the slightest taint of fraud in the transaction whereby Harriet W. English conveyed title to Ethel O. Bradley and the agreement whereby this was accomplished. The finding of the trial court that this was a *bona fide* transaction without any intent to defraud any person or creditor is, we think, amply sustained by the evidence. At the time Mr. Olson arranged for the refinancing of the loan, Mrs. English was in a situation where it was extremely probable that she would lose her entire

equity in the property. The bank had already given her notice of default and had advertised the property for sale and unless Mr. Olson, or someone else, came to her rescue she would lose the whole thing. Mr. Olson, in that situation, put over $8,000 of his own and his sister's money into the deal and pledged his own credit to the extent of $40,000 with the Merchants National Trust and Savings Bank to secure a loan to pay off the Citizens Bank. We find nothing in the conduct of Mr. Olson as it is set forth in the record before us which would subject him to any criticism whatever. He acted for the best interest of his client and with the clear understanding that if he advanced money and pledged his credit that he should share in the profits of the transaction.

In short, after a careful perusal of the record, we are satisfied that all of the material findings of the trial court to the effect that all of the financial transactions by which the plaintiff finally acquired title to the property in controversy were *bona fide* transactions and that no intent was shown in any of them to injure, hinder, delay or defraud any creditors of Edward C. English, English Apartment Company or English Realty Corporation, are supported by substantial evidence and that the findings in turn support the judgment.

We find no merit in the second contention that no proof having been shown by the plaintiff that the English Realty Corporation was duly authorized to execute and deliver said grant deed, that necessarily she has failed to establish her case and a nonsuit should have been granted. We have already pointed out that a valuable consideration to the corporation having been shown and the corporation having profited thereby, the corporation and its creditors would be estopped to set up any lack of authority on the part of the corporate officers to execute said conveyance. (*Wood Estate Co.* v. *Chanslor, supra.*) We are of the opinion that the appellants as creditors of the English Apartment Company and Edward C. English personally are in no position to set up any lack of authority on the part of the English Realty Corporation to execute the conveyance to Mrs. English. It is only if the corporate entity of the English Realty Corporation be entirely disregarded and wiped out that the appellants have any standing in the present action, for, if

the corporate entity be not disregarded, they are not creditors of the English Realty Corporation but are only creditors of the English Apartment Company and Edward C. English personally. Having asked the court to disregard the corporate entity of the English Realty Corporation and treat it as the *alter ego* of Edward C. English (which the trial court in fact did), the appellants may not in the same breath ask the court to consider that it is a corporation and can only act by means of a resolution duly and properly authorized by its board of directors. It is true that in a proper case to prevent fraud the court will disregard the corporate entity, but having done so, it will not in the same action set it up again and require that all the formalities necessary for a corporation to act shall be properly complied with. If Edward C. English was the *alter ego* of the English Realty Corporation then his acts as an individual were binding upon the corporation. In other words, appellants may not take the inconsistent position of claiming that the corporate entity is to be disregarded in order to be considered as creditors of the English Realty Corporation by reason of the obligation to them of Edward C. English personally or the English Apartment Company, and in the same suit and at the same time assert that its corporate identity must be recognized and a duly authorized resolution of its board of directors required to give validity to an instrument executed by it through its officers. The appellants may either ask us to disregard the corporate entity, or ask us to recognize the corporate entity, but they may not in the same breath ask us to both uphold the corporate entity and disregard it.

█ In this regard, complaint is made by appellants that after the commencement of the trial they were not permitted to amend their pleadings so that they might set up and prove the lack of authorization of the officers of the English Realty Corporation to execute the conveyance of January 7, 1926, to Harriet W. English. Permission to amend was refused upon the ground that in their original pleadings they had set up the fact that the deed had been executed to hinder, delay, injure and defraud creditors of Edward C. English, thereby admitting the execution of said instrument, and that they should not be allowed to take the inconsistent position after issues were joined of claiming

that the deed was not properly authorized and was therefore void. In other words, the court did not permit them to claim that the English Realty Corporation both was and was not a corporate entity.

It is apparent from the above discussion that the court was well within its right in refusing to permit the amendment and in refusing to permit the admission of evidence by the appellants which tended to contradict the admissions of their pleadings.

█ Finally, appellants claim that some fifty-eight errors were committed by the trial court. These errors are merely enumerated and given a number and no attempt is made by the appellants to show wherein the action of the court was erroneous, aside from the mere statement that it was erroneous. "An appellate court cannot assume the task of discovering the error in a ruling and it is the duty of counsel by argument and the citation of authority to show the reasons why the rulings complained of are erroneous. Contentions supported neither by argument nor by citation of authority are deemed to be without foundation and to have been abandoned." (2 Cal. Jur. 732; *People* v. *McLean,* 135 Cal. 306 [67 Pac. 770]; *People* v. *Broyles,* 113 Cal. App. 390 [298 Pac. 131].)

The judgment is affirmed.

Preston, J., Langdon, J., Waste, C. J., Shenk, J., Seawell, J., and Thompson, J., concurred.