Filed 2/8/16  Nazarian v. Colony Ins. Co. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| RICHARD NAZARIAN, et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> COLONY INSURANCE COMPANY, <br><br> Defendant and Respondent. | B257595 <br><br> (Los Angeles County <br> Super. Ct. No. BC501308) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm Mackey, Judge.  Affirmed.

Reisman & Reisman, Daniel A. Reisman; Law Office of John J. Perlstein and John L. Perlstein for Plaintiffs and Appellants.

Ropers, Majeski, Kohn & Bentley, Michael T. Ohira and Terry Anastassiou for Defendant and Respondent.

_____

Richard Nazarian and the RCN Corporation appeal from the judgment entered in favor of Colony Insurance Company in this action for breach of an insurance contract. In the underlying lawsuit, Michael Florman had sued Nazarian and RCN for breach of contract, breach of warranty, negligence, and misrepresentation in conjunction with a home construction project. Nazarian requested that his insurance carrier Colony defend him in the action. Colony declined, asserting that the Florman complaint sought damages for residential construction expressly excluded from coverage under the insurance policy. Nazarian and RCN then brought this action for declaratory judgment, breach of contract, and breach of the implied covenant of good faith and fair dealing. The trial court granted summary judgment on the grounds that the policy afforded no coverage for the claims asserted in the underlying litigation and that Colony had no duty to defend Nazarian and RCN in that action. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Florman's Action

In March 2009, the Nickel Company, identified as a division of RCN Corporation, entered into a contract with Michael Florman to construct an 8,500 square foot single family residence for Florman and his wife in Pacific Palisades. In 2012 Florman sued Nazarian individually and under the fictitious business name of The Nickel Company, as well as a corporation identified as "RCN Corporation dba The Nickel Company" for breach of contract, breach of warranty, negligence, and misrepresentation. Florman's complaint alleged that Nazarian had represented himself to Florman and his wife as an experienced licensed general contractor who could and would build their dream home to their specifications and within their budget. Florman alleged that Nazarian, "on behalf of himself and the entities he controlled or under which name he did business . . . represented to the [Flormans] that he could and would take complete responsibility for the construction of their Home, and that such could and would be completed to their satisfaction for approximately [$1,500,000]." Nazarian, the complaint alleged, further represented that he would personally act as the construction

2

superintendent and would closely monitor the work.  Based on Nazarian's representations, the Flormans hired Nazarian and his businesses to construct their home. Nazarian and his businesses discontinued their work on the Florman construction project prior to the completion of the work initially envisioned.  Florman alleged that Nazarian and his businesses did not act competently; that their work fell below the standard of care; that they failed to provide appropriate supervision and cost control; that their subcontractors' work was deficient in many respects, causing substantial damage to the dwelling; and that the home was not free of construction defects.  These allegations were incorporated into Florman's causes of action for breach of contract, breach of express and implied warranty, and negligence.

## II.     The Insurance Policy and Tender of Defense

Nazarian tendered the Florman lawsuit to Colony for defense and indemnification. Colony had issued a liability insurance policy to "Richard Charles Nazarian, d.b.a. The Nickel Company,"[1] which was initially effective November 14, 2008, through November 14, 2009 (Policy No. GL950087), and was renewed though November 14, 2010 (Policy No. GL950087-1).

The policy provided commercial general liability coverage:  "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  The policy expressly set forth the right and duty to defend the insured against suits seeking covered damages, and disclaimed any obligation to defend the insured in a lawsuit seeking damages for bodily injury or property damage to which the insurance did not apply.  By means of Endorsement U159-0702, the policy expressly limited the commercial general liability

---

[1]     Nazarian submitted a declaration in conjunction with his opposition to the motion for summary judgment in which he stated that he is the principal and sole shareholder of the RCN Corporation, and that RCN does business under the fictitious name of The Nickel Company.

3

coverage to bodily injury or property damage that resulted from the business described as "GENERAL CONTRACTOR: REMODELING."

With another endorsement, the policy also expressly excluded coverage for any claims arising from residential construction work, except as otherwise specified by the policy. This endorsement, U527-0607, was entitled, "EXCLUSION: ANY RESIDENTIAL CONSTRUCTION WORK EXCEPT AS SPECIFIED."[2] The endorsement modified the coverage under the commercial general liability coverage to add the following exclusion: "This insurance does not apply to 'bodily injury' or 'property damage' included in the 'products-completed operations hazard' and arising out of or resulting from 'your work' on any 'residential construction.'" "Residential construction" was defined to mean "buildings, structures or other improvements to real property constructed, maintained or sold for the purpose of being used by natural persons as a dwelling, inclusive of all infrastructure improvements in connection therewith, including, but not limited to, grading/excavating, utilities, road paving/curbs/sidewalks."

The policy provided that the exclusion for residential construction "may be subject to exception, as set forth below, but only if the box corresponding to the description of any such exception is checked, and then only to the extent of the exception so described." None of the boxes corresponding to the described exceptions was checked.

Colony denied coverage and rejected Nazarian's request for a defense on the basis that Florman's suit concerned new residential construction and was therefore excluded from coverage.[3]

---

**2** We are aware that in the course of the summary judgment briefing, Nazarian and RCN contended that the applicable version of the endorsement excluded "new residential construction" as opposed to "any residential construction," but as discussed below we quote the language of the policy from the copy that Nazarian and RCN attached and incorporated by reference into their complaint.

**3** In denying coverage, Colony reproduced language from the policy and Endorsement U527-0607. Colony's recitation of the policy language involved the "new residential construction" version of the endorsement rather than the "any residential

4

### III. Nazarian and RCN's Action Against Colony and the Summary Judgment

Nazarian and RCN sued Colony, among others, for breach of contract and breach of the implied covenant of good faith and fair dealing. They also requested a declaration of the rights of the parties. According to the allegations in the complaint, Colony breached its insurance contract and the implied covenant of good faith and fair dealing by refusing to defend and indemnify Nazarian and RCN in the Florman action.

Colony moved for summary judgment. After reviewing the evidence and hearing argument, the trial court concluded that the insurance policy did not provide coverage for Nazarian individually or doing business as The Nickel Company for the claims asserted in the Florman action and that Colony had no duty to defend him in either capacity; that the policy did not provide coverage to RCN under either its corporate name or fictitious name of The Nickel Company for the claims asserted in the Florman action and that Colony had no duty to defend it; that the cause of action for violation of the covenant of good faith and fair dealing failed in the absence of insurance coverage; and that Colony was entitled to summary adjudication of the cause of action for violation of the covenant of good faith and fair dealing under the genuine dispute doctrine (see *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 723-724) because a genuine dispute existed as to whether Colony owed any duties under the policy. The court entered judgment in Colony's favor. Nazarian and RCN appeal.

### DISCUSSION

### I. Applicable Principles and Standard of Review

The interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. (*Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1204; *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18

---

construction" version attached to and incorporated by reference into the complaint by Nazarian and RCN.

(*Waller*).) "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.)'" (*Waller*, at p. 18.) "When interpreting a policy provision, we give its words their ordinary and popular sense except when they are used by the parties in a technical or other special sense." (*Haynes*, at p. 1204.) "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." (*Waller*, at p. 18.) When a policy is clear and unequivocal, the only thing the insured may reasonably expect is the coverage afforded by the plain language of the mutually agreed-upon terms. (*TIG Ins. Co. of Michigan v. Homestore, Inc.* (2006) 137 Cal.App.4th 749, 755; see *VTN Consolidated, Inc. v. Northbrook Ins. Co.* (1979) 92 Cal.App.3d 888, 892 [insurance policy "must be construed from the language used and . . . where . . . its terms are plain and unambiguous, the courts have a duty to enforce the contract as agreed upon by the parties"].)

"Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms. [Citations.] [¶] The court generally may not consider extrinsic evidence of any prior agreement or contemporaneous oral agreement to vary or contradict the clear and unambiguous terms of a written, integrated contract. [Citations.] Extrinsic evidence is admissible, however, to interpret an agreement when a material term is ambiguous. [Citations.] [¶] When the meaning of the words used in a contract is disputed, the trial court engages in a three-step process. First, it provisionally receives any proffered extrinsic evidence that is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. [Citations.] If, in light of the extrinsic evidence, the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid the court in its role

6

in interpreting the contract. [Citations.] When there is no material conflict in the extrinsic evidence, the trial court interprets the contract as a matter of law. [Citations.] This is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence [citations] or that extrinsic evidence renders the contract terms susceptible to more than one reasonable interpretation. [Citations.] If, however, there is a conflict in the extrinsic evidence, the factual conflict is to be resolved by the jury. [Citations.]" (*Wolf v. Walt Disney Pictures and Television* (2008) 162 Cal.App.4th 1107, 1126-1127 (*Wolf*), footnote omitted.)

An insurer must defend any action that seeks damages potentially covered by the policy. (*Gray v. Zurich Insurance Co*. (1966) 65 Cal.2d 263, 275.) Determination of potential coverage is made by comparing the allegations in the third party complaint with the terms of the policy, considering as well any extrinsic facts made known to the insurer at the inception of the case that reveal a possibility the claim may be covered. (*Waller*, *supra*, 11 Cal.4th at p. 19; *Barnett v. Fireman's Fund Ins. Co*. (2001) 90 Cal.App.4th 500, 509.) Doubts as to whether the facts give rise to a duty to defend are resolved in the insured's favor. (*Horace Mann Ins. Co. v. Barbara B*. (1993) 4 Cal.4th 1076, 1081.) "[T]he duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy. [Citation.]" (*Waller*, at p. 19.) When no possibility of coverage exists, the insurer has no duty to defend. (*Ibid*.; *Aetna Casualty & Surety Co. v. Superior Court* (1993) 19 Cal.App.4th 320, 327 [duty to defend, while broader than duty to indemnify, is not unlimited; if complaint shows "no potential liability for covered damages as a matter of law, there can be no potential for indemnification, nor can there be a duty to defend"].)

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and decide independently whether the triable facts not subject to dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) On an appeal from a

summary judgment, "[a]s with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error, and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed." (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116, disapproved on another ground as recognized in *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 41-42.) "[I]t is not a reviewing court's role to construct theories or arguments which would undermine the judgment." (*Mead v. Sanwa Bank California* (1998) 61 Cal.App.4th 561, 564.) As the California Supreme Court has long held, "'[a]n appellate court cannot assume the task of discovering the error in a ruling." (*Bradley v. Butchart* (1933) 217 Cal. 731, 747; see also *In re Phoenix H.* (2009) 47 Cal.4th 835, 845.) "We do not serve as 'backup appellate counsel,' or make the parties' arguments for them." (*Inyo Citizens for Better Planning v. Board of Supervisors* (2009) 180 Cal.App.4th 1, 14, quoting *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 546.)

## II.     Scope of Coverage Under the Policy

From the inception of the handling of this insurance claim, the parties have all proceeded on the understanding that whether Nazarian and RCN's activities constituted remodeling or residential construction was the central question that would determine whether there was coverage and a duty to defend in the Florman litigation: If Nazarian and RCN were remodeling the Florman home, the policy would offer coverage and there would be a duty to defend; but if they were engaged in residential construction, the Colony policy did not cover that work and there would be no duty to defend. In Colony's claim notes, which were submitted to the trial court in support of Nazarian and RCN's opposition to the motion for summary judgment, Colony noted on October 1, 2012, that this new construction defect litigation naming Nazarian as the general contractor and project manager implicated "exclusion U527 which does not give back any residential construction of any type so all residential construction is excluded, as such there is no

8

coverage for this loss . . . . " This is a reference to Endorsement U527-0607, the exclusion modifying the commercial general liability coverage to exclude any residential construction. Subsequently, on October 11, 2012, Colony denied coverage on the basis that the litigation involved new residential construction and was therefore outside the scope of the policy. A few days later, Nazarian's insurance broker contacted Colony to assert that the work constituted remodeling. Colony responded that if Nazarian "could provide permits or contracts to show it was a remodel," it would reevaluate its denial of coverage.

As evidenced by a chain of electronic mail correspondence that was before the trial court at summary judgment, the parties continued to debate whether the work on the Florman home constituted remodeling or construction. The attorney for Nazarian and RCN contacted Colony on October 24, 2012, requesting that Colony reconsider its position because Nazarian and RCN "did not build a new home and in fact only did site work to an existing property," so the exclusion Colony had relied upon did not apply. Colony responded that it agreed that if this was a remodel rather than construction, the claim would fall within the scope of the insurance policy. Colony's specialist advised counsel that he had asked "the insured and the insured's agent for documentation that this was not new construction in spite of the allegations in the complaint that the insured planned and constructed the home. I am more than willing to retain defense counsel once this is confirmed. The insured indicated he had permits which indicated that this was in fact a remodel, would you have such documents?" Nazarian and RCN's counsel responded, "I will get what we have—there was an existing structure and thus not new construction." The Colony specialist wrote to counsel, "Again[,] I am not saying that is not the case, I just have seen nothing to confirm that. Will the insured sign a letter to me attesting to that? If so that will work."

On October 24, 2012, Nazarian's counsel sent to Colony what he described as "the permit showing the existing structure and the demo work done—clearly existing construction and thus a defense is owed. Please advise if you are appointing counsel." The Colony specialist wrote a claim note that day in which he stated that Nazarian and

9

RCN's attorney "has sent several emails alleging the home built was remodel not new construction. He then sent a permit which he alleges shows there was demo work done on an existing home. That it does, it shows the home, garage and pool were completely removed[,] the lo[t] cleared and the sewer line capped. As such the insured had to build a completely new structure, he did not renovate or remodel an existing structure, so how they get that this is not new construction is not yet known to me. I have asked the att[orney] to call me and discuss." Later that day, the Colony specialist noted that the attorney had called and taken the position that "the fact that the insured did the demo constitutes remodel???? Even though he did infrastructure work and retaining walls for the new home to be built. I would disagree and still feel the U159-designated work remodeling contractor [Endorsement U159-0702, limiting commercial general liability coverage to the business of "GENERAL CONTRACTOR: REMODELING"] and the[ ]U527 residential new construction which includes infrastructure [Endorsement No. U527-0607] both apply here. The permit issued to the insured is clear that this lot was completely cleared before the insured did any work on it other than demo." Accordingly, on October 25, 2012, Colony advised Nazarian's counsel that it had reviewed the further information that had been provided but that the company's coverage position remained unchanged. The claim notes state that counsel was "pushing back. Indicating this was not new construction, etc. We are not convinced and as such will maintain our position. Counsel has threatened to seek declaratory relief."

As this correspondence shows, the parties understood this insurance policy identically and never considered its language to be ambiguous. The only question, which the parties discussed at length, was the factual matter of whether the insured had been engaged in remodeling or new construction. The parties agreed that this was the key question at the summary judgment stage as well. Colony sought summary judgment on Nazarian and RCN's claims on the ground that the work done as residential construction, and was not therefore covered under the policy: "Plaintiffs were not sued because of home remodeling, but for residential construction. Plaintiffs demolished the house to the ground, and graded and prepared the building site as part of the construction of a new

10

8,500 square foot luxury residence." Nazarian and RCN, in turn, argued in opposition to summary judgment that they did not "exclusively perform new residential construction on the Florman project," and that "at least some of the work that Nazarian performed on the Florman project falls well within the definition of remodeling."[4]

The trial court resolved the dispute at summary judgment on the same basis upon which it had been litigated: by determining whether Nazarian and RCN's work constituted remodeling or residential construction. The court wrote, "The insuring agreement of the Colony Policies provides in relevant part that coverage is provided only if the claim results from the business of remodeling. This limitation is conspicuously set forth in Endorsement U159-0702 of the Colony Policies." The trial court continued, "The plain language of this language is clear, and must be respected. It reflects the insurance requested by "Richard Charles Nazarian d.b.a. The Nickel Company"— coverage for remodeling work, and not residential construction." The court concluded that the allegations in the Florman complaint alleged residential construction rather than remodeling. Because Nazarian and RCN engaged in residential construction, and

---

[4] Nazarian appeared to believe that the contents of his application for insurance were relevant to the determination of the policy's coverage, as he referred to the application in the declaration he submitted in opposition to the motion for summary judgment. While insurance contracts may incorporate other documents by reference (see, *e.g.*, *Kleveland v. Chicago Title Ins. Co.* (2006) 141 Cal.App.4th 761, 765), this policy did not incorporate Nazarian's application. The policy contained only one coverage part. According to the Commercial General Liability Coverage Part Declarations, that coverage part consisted of that Declarations form, the Common Policy Conditions, the Commercial General Liability Coverage Form, and the endorsements indicated on the Declarations page. The Declarations page provided that the applicable forms and endorsements were listed on a separate schedule, Form U001, and Form U001 listed those forms and endorsements included in the policy. At no point on any of these pages did the policy refer to or specify that it included the application. Moreover, in the Common Policy Conditions, the policy specified: "This policy contains all the agreements between you and us concerning the insurance afforded." The policy provided that its terms could be amended or waived "only by endorsement issued by us and made a part of this policy." Therefore, Nazarian's application is not a part of the insurance policy.

Endorsements U159-0702 and U527-0607 limited the policy coverage to remodeling and excluded residential construction, the trial court concluded that there was no coverage and no duty to defend under the policy.

On appeal, Nazarian and RCN contend that the trial court should not have granted summary judgment against them. They argue that "[b]ecause at least some of Nazarian's operations on the Florman project can be defined as remodeling, there is potential for a covered claim." They continue, "When Nazarian commenced work on the Florman home, there was an existing residential structure. Nazarian then engaged in operations to change the structure and form of existing residential property. Certain elements were demolished, whereas other elements were retained and altered, including the driveway, the gate, and the retaining walls. [Citation.] Nazarian's work thus fits within the definition of remodeling." Colony, in turn, argues that the Nazarian defendants demolished a pre-existing structure, leaving only parts of a driveway, retaining wall, and gate; and that he performed some grading and excavation, all of which constituted residential construction rather than remodeling. We consider whether Colony demonstrated as a matter of law that Nazarian and RCN's work fell outside the scope of coverage of the policy; that is, whether the work performed constituted remodeling or residential construction.

### III.    Summary Judgment

We conclude that summary judgment was proper here, because Colony successfully demonstrated, as a matter of law, that the policy did not cover the causes of action tendered to it, and that the relevant extrinsic evidence shows that the policy is not reasonably susceptible to Nazarian's argument on appeal. (*Wolf*, *supra*, 162 Cal.App.4th at pp. 1126-1127.) Endorsement U159-0702 of Nazarian's insurance policy expressly limited Nazarian's coverage to the business of "GENERAL CONTRACTOR: REMODELING." Nazarian and RCN do not dispute that this endorsement is part of the insurance policy. We agree with the trial court that this language is clear and unambiguous, and that the policy was expressly limited to covering remodeling work.

12

When the policy is read as a whole, as insurance policies are (*Waller*, *supra*, 11 Cal.4th at p. 18), both Endorsement U159-0702 and Endorsement U527-0607, excluding any residential construction, demonstrate that the intent of the policy was to cover the insured with respect to remodeling activities and to exclude residential construction from the scope of coverage. Indeed, Nazarian and RCN expressly conceded in their briefing that if the version of Endorsement U527-0607 that prohibits "any residential construction work except as specified" is in fact the operative endorsement, "then the claims against them in the underlying action would not be covered." That version is the operative endorsement here. The version of Endorsement U527-0607 with "any residential construction" language was attached, as part of the insurance policy, as Exhibit A to the complaint. Nazarian and RCN pleaded in the complaint that Exhibit A was a copy of the applicable policy and incorporated it by reference into the complaint. This constituted a binding judicial admission by Nazarian and RCN that the insurance policy included the "any residential construction" version of Endorsement U527-0607. (See *Food Safety Net Services v. Eco Safe Systems USA, Inc*. (2012) 209 Cal.App.4th 1118, 1126-1127; *St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co*. (2003) 111 Cal.App.4th 1234, 1248.) As such, the Nazarian defendants have conceded in their briefing that the claims alleged in the Florman litigation are not covered by the Colony commercial general liability policy. We agree.[5]

---

[5] We do not, however, decide in this opinion whether Endorsement U527-0607 precludes coverage in this case. At our request, the parties submitted two rounds of supplemental briefing on various matters relating to Endorsement U527-0607, including whether Colony met its burden on summary judgment to establish it had no duty to defend Nazarian in light of that endorsement. From the parties' supplemental briefing, it is clear that a determination of whether the work here falls within the endorsement's products-completed operations hazard, as well as whether other policy exclusions concerning works in progress would apply if the endorsement's products-completed operations hazard does not, requires a factual determination of whether Nazarian's work on the project was completed or abandoned. Because these issues were not litigated before the trial court, the evidentiary record on appeal is insufficient to permit a determination of whether completion or abandonment occurred and whether the products-completed operations hazard applies here. Although we cannot on this record determine

The complaint in the Florman litigation alleged not remodeling but the demolition of an existing house and construction of a new home. In the complaint, Florman alleged that he and his wife contacted Nazarian as part of planning "to build the home of their dreams." They were "in a position to plan and construct a large (approximately 8,500 square feet) residence . . . which they desired to have built in accordance with the highest standard of care." Florman and his wife were seeking general contractors and subcontractors "to build their home," and they were dependent on professional advice because they had "almost no experience with residential construction." According to the complaint, Nazarian represented that he would "build the home of their dreams." The Flormans met with Nazarian "to ensure that he and his companies were fully conversant with what was to be constructed and the circumstances surrounding the same, the site, the proposed home, their expectations, and all other relevant matters." Nazarian was alleged to have represented that he "would take complete responsibility for the construction of their Home" and that he would personally act as the construction superintendent. Florman alleged that he retained the Nazarian defendants in the belief that the home would be constructed as promised.

Nazarian and RCN argue that "at least some" of the work performed "can be defined as remodeling," and thus there was a potential of coverage and a duty to defend. Because there was a home present on the property when Nazarian began work, Nazarian and RCN argue that they were "chang[ing] the structure and form of existing residential property." Acknowledging the demolition but noting that a few items were retained and

whether Endorsement U527-0607 excludes coverage for the work performed here, we may nonetheless look to the endorsement, together with the other portions of the policy, as expressing the policy's general intent to provide coverage for remodeling but to exclude coverage for residential construction. This is consistent with the method in which the parties and the trial court relied upon this exclusion, as none of the litigants made an argument in the summary judgment moving papers or at the hearing that this exclusion was irrelevant, and the trial court relied on this exclusion to help develop an understanding of what was covered and what was not covered by the policy. (*Waller*, *supra*, 11 Cal.4th at p. 18 [insurance contracts are interpreted as a whole].)

14

altered, Nazarian and RCN claim on appeal that the work performed "fits within the definition of remodeling." The complaint and available extrinsic facts, however, demonstrated that the scope of the construction work exceeded anything that could be considered remodeling. Nazarian, in his declaration submitted in opposition to the motion for summary judgment, described the work he performed for Florman as including "demolishing much of the existing structure, excavating, adding some of the foundation, and waterproofing." The only features that Nazarian could identify remaining after the demolition were the driveway, the gate, and a retaining wall. We agree with the trial court that the record shows that "Plaintiffs demolished the old home to make way for the construction of the Flormans' 'dream home'" and that they "graded and prepared the building site as part of the construction of a new 8,500 square foot luxury residence."

According to the complaint provided to Colony when Nazarian tendered the lawsuit for defense and indemnification, Nazarian and RCN were involved in building a new house for Florman and were sued as a result. Because the policy was expressly limited to remodeling, Colony reasonably concluded that there was no potential for coverage for Nazarian or RCN. With no coverage provided by the policy for the Florman action, Colony did not breach the insurance contract by declining to defend or indemnify Nazarian and RCN; and without a valid cause of action for breach of the insurance contract, the cause of action for breach of the implied covenant of good faith and fair dealing necessarily fails as well. (*Waller*, *supra*, 11 Cal.4th at pp. 35-36.) Summary judgment was therefore appropriate.

Nazarian and RCN argue, however, that there was a potential for coverage because property damage was alleged in the Florman complaint. Specifically, they rely on paragraph 137 of the Florman complaint, in which Florman identified 10 different negligent acts in conjunction with the work performed at the residence site. According to Nazarian and RCN, "at least one of these alleged acts of negligence must constitute an occurrence [of property damage] under the policy," but they fail to present any argument as to how these acts of property damage in the course of residential construction can

15

survive the insurance policy's limitation of coverage to property damage that arises from remodeling work.  Nazarian and RCN have not established any error.

Nazarian and RCN also contend that because the business description on the Common Policy Declarations page of the insurance policy states "Remodeling Contractor" and the Commercial General Liability Coverage Part Declarations form lists classifications for "Contractors executive supervisors or executive superintendents" and "Contractors—subcontracted work—in connection with construction, reconstruction, repair or erection of buildings," the only way to give meaning to all words in the policy is to conclude that these words were part of the business description, thus leading to a potential for coverage here.  While courts must give meaning to all words in a policy, they must also avoid constructions that render words superfluous or a nullity.  (Civ. Code, § 1641.)  Nazarian and RCN's proposed construction would render the other express limitations of coverage in the policy a nullity.  By its own terms, the policy must be read through the lens of Endorsement U159-0702, which specifically limits the coverage provided by the policy to the business of "GENERAL CONTRACTOR: REMODELING," as well as the broader intent to exclude residential construction expressed in Endorsement U527-0607.  Applying Endorsement U159-0702's limitation of coverage does not render the Common Policy Declarations or the Commercial General Liability Coverage Part Declarations a nullity; it merely restricts coverage to those contracting tasks involving remodeling.

Our conclusion that as a matter of law there existed no potential for coverage under the policy makes it unnecessary to address Nazarian and RCN's remaining arguments that RCN may be considered an insured under the policy for purposes of the duty to defend against the Florman action and that the genuine dispute doctrine cannot support the summary adjudication of the implied covenant of good faith and fair dealing cause of action.

16

**DISPOSITION**

The judgment is affirmed.  Respondent shall recover its costs on appeal.


ZELON, Acting P. J.


We concur:


SEGAL, J.


BECKLOFF, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.