[Crim. No. 436. In Bank.—July 6, 1898.]

In the Matter of the Disbarment of EDGAR B. HAYMOND.

ATTORNEY AT LAW—DISBARMENT—INSUFFICIENT ACCUSATION—OFFER TO SELL CONFESSION.—An application for the disbarment of an attorney at law, accusing him of having offered and attempted to make sale of a confession of a defendant accused of murder, while his trial was going on, for publication thereof in a daily newspaper, which the paper required to be attested by the district attorney and a judge of the superior court, to which the attorney replied that he was authorized to comply with such conditions, but the negotiations were closed without any confession having been received or sold or caused to be published by him, does not state facts sufficient to authorize his disbarment.

ID.—FAILURE IN RESPECT DUE TO COURTS—CRIMINAL CHARGE—CONSTRUCTION. The charge that the attorney failed to maintain the respect due

to courts and judicial officers, is in the nature of a criminal charge. All intendments are in favor of the accused; and a construction favorable to innocence must be given to the accusation, if possible. Where the accusation does not charge specifically that the accused offered to secure a certificate of the district attorney and of a superior judge to the confession, or asserted that he could do so, and only imports that he and his principal were willing to comply with the conditions in that respect required by the newspaper, it does not show that he failed to maintain the respect due to courts and judicial officers.

ID.—INFLUENCING JURORS—VIOLATION OF PENAL CODE—PUBLIC OFFENSE—TRIAL AND CONVICTION.—The charge that the accused, who was not an attorney in the criminal case, violated section 95 of the Penal Code, by conspiring with the attorney for the defendant accused of murder, to publish a confession which would increase the difficulty of the court to get a jury, and would place before sworn jurors evidence not introduced at the trial and in court, is not sufficient, without showing a trial and conviction for such violation.

ID.—MISCONDUCT—CRIME OUTSIDE OF PROFESSIONAL DUTY.—Where the alleged misconduct involves the commission of a public offense, for which the attorney might be prosecuted criminally, he cannot be required to make any answer by which he might criminate himself; and he cannot be disbarred for an act constituting a crime involving moral turpitude, outside of his professional duty, until he has been tried and convicted thereof.

ID.—MORAL DELINQUENCY AFFECTING TRUSTWORTHINESS AS ATTORNEY.—A transaction which shows an attorney to be so wanting in integrity, or involving such moral delinquency as an attorney, that the legal business of others cannot be safely intrusted to him, is ground for disbarring him.

ID.—RIGHT TO RECEIVE AND PUBLISH CONFESSION—DISHONEST ACTION NOT PRESUMED.—It is not wrong for an attorney not connected with the conduct of a criminal case, to receive the confession of the defendant, if no inducements or threats are used to obtain it; and having such a confession, he has the same right to publish it that a daily newspaper would have. Where the accusation does not show a conspiracy to procure the confession, and the first connection of the accused with the affair was upon the proposition that the defendant desired to make it, it cannot be presumed, in the absence of allegation, that it was to be procured by dishonest practices, or that the accused knew that a defense was being made that was inconsistent with the confession, or knew of any wrong upon the part of the defendant's attorney.

ACCUSATION in the Supreme Court, at the instance of the Bar Association of San Francisco, to disbar an attorney.

The facts are stated in the opinion of the court.

William H. Fifield, John S. Tobin, and E. W. McGraw, for the Bar Association.

Barclay Henley, and Crittenden Thornton, for Respondent.

TEMPLE, J.—Application at the instance of the Bar Association of San Francisco.

It is charged that the accused has violated his oath of office and his duty as an attorney, in that he has failed to maintain the respect due to the courts of justice, and has not discharged his duty as an attorney and counselor to the best of his ability.

It is recited that one Albert F. G. Veresenecockockhoff was being tried in Department Twelve of the superior court of the city and county of San Francisco upon a charge of the crime of murder. He was being defended by three counsel, one of whom was B. W. McIntosh, Esq., who had been duly admitted to practice law. Several days were occupied in impaneling a jury, during which time, though some jurors had been accepted and sworn, the panel was incomplete. "The Daily Examiner" was a newspaper published daily in San Francisco, and was a paper of general circulation in the city and likely to be read by the judge and jury which were engaged in said trial.

During the trial, and while McIntosh was defending the said defendant, he informed respondent that Veresenecockockhoff had been approached by a representative of the "Examiner" and offered ten thousand dollars for a confession of guilt on the part of the said defendant, to be published while the trial was pending. Respondent did not believe such a price had been offered, but thought such a confession could be sold to the newspaper for two thousand or three thousand dollars; "thereupon respondent and McIntosh entered into a scheme, whereby said McIntosh should procure a confession of guilt from his client, the said Albert *Hoff*, and the respondent should negotiate, or attempt to negotiate, a sale thereof for money to the said 'Daily Examiner' for publication in said newspaper while said trial was in progress."

The next day McIntosh procured what purported to be such a confession and which respondent believed to be such. Respondent undertook to attempt a sale of it to the newspaper for two thousand dollars, to be published while the trial was in

progress. The respondent accepted the employment and attempted to effect a sale, but failed to do so. During the negotiations the respondent was informed that the "Daily Examiner" would purchase no confession "unless it were hedged about with all the formalities of law, attested by the district attorney and a judge of the superior court, to which the respondent replied that he (respondent) was authorized to comply with such conditions." Respondent was then informed that the "Examiner" would pay seven hundred and fifty dollars and no more. This closed the negotiations. So far as appears, Haymond never did receive the confession, and certainly did not sell it or cause it to be published.

Although Haymond never did receive or sell a confession—and, so far as appears no confession was ever made—the fact that he attempted to make such a sale was published during the said trial in all the daily newspapers published in the city and county of San Francisco. No doubt such publication tended to some extent to embarrass the court in the trial. Such a publication was not intended by the respondent.

No answer has been made by the accused, but the matter was presented on demurrer.

The committee insist, with the greatest earnestness, upon the charge that the accused offered to sell the confession, and agreed that it should be attested by the district attorney and a judge of the superior court, as a ground for expulsion.

They say: "It amounts to saying that the district attorney and a judge of the superior court will attest or certify a confession of guilt of the man on trial for his life, which is to be then sold to a newspaper for publication while the trial is going on. A more gross imputation upon a court or judge cannot be imagined." In this they charge respondent failed to maintain the respect due to courts and judicial officers.

This accusation is in the nature of a criminal charge, and all intendments are in favor of the accused. The accusation is not sufficient if, all its statements being true, the accused could be innocent. It does not appear, and is not charged, that Haymond offered to procure such a certificate or asserted that he could do so. It is simply charged that a representative of the "Examiner" demanded such a confession, and that Haymond

was willing to comply with the condition. A construction favorable to innocence must be given to this if possible, and I think it naturally indicates no more than that Haymond and his principal were willing. This charge cannot, therefore, be sustained.

The most plausible ground upon which a disbarment is asked, in my opinion, is that respondent entered into a scheme or conspiracy with McIntosh, in which the latter was to do an act violative of his duty to his client and to the court. They were to publish a confession which would increase the difficulty of the court to get a jury, and would also be placing before jurors already sworn evidence not introduced at the trial and in court. It is contended that this would be violative of section 95 of the Penal Code. But, plainly, other facts would have to be shown in addition to those alleged to bring the case within that section. It would certainly be unprofessional for one engaged to defend a person accused of crime to attempt to get evidence before a jury in that mode, whether it were favorable or not. And it would constitute a gross violation of his duty to his client to publish in that mode evidence which would be injurious to his client.

It must be remembered, however, that Haymond was not an attorney in the case, that he was not acting as an attorney, and was not employed because of his professional character. True, if the transaction showed him to be so wanting in integrity that the legal business of others cannot be safely intrusted to him, he should be disbarred. But not every reprehensible transaction will be ground for disbarring an attorney. This matter was very thoroughly considered in *Ex parte Wall*, 107 U. S. 265, and particularly in the dissenting opinion of Justice Field. Upon this general proposition I do not understand that there was a difference in that case. All agreed that an attorney could be disbarred, not only for professional misconduct, but for such misconduct outside of his profession as shows want of integrity and trustworthiness. But Justice Field contended that when the alleged misconduct involved the commission of a public offense, for which the attorney might be prosecuted criminally, that respondent should not be required to make any answer by which he might criminate himself, and that he could not be dis-

barred for an act constituting a crime involving moral turpitude,. but outside of his professional duty, until he had been tried and convicted.

Does the accusation charge the respondent with an offense involving such moral delinquency as would affect his trustworthiness as an attorney? It certainly was not wrong for Haymond to receive the confession of Veresenecockockhoff—sometimes called Hoff—if no inducements or threats were used to obtain it. Having it, no law would prevent him from publishing it. It might have made it more difficult to obtain a jury. But so does every publication of the evidence that a crime has been committed. Yet newspapers are permitted to publish such news. I see no more objection to the publication by Haymond than by a daily newspaper.

The accusation does not show a conspiracy to procure a confession from Hoff. Haymond's first connection with the affair is upon the proposition that Hoff desired to make it. We are not at liberty to suppose that it was obtained by dishonest practices, or that Haymond knew that a defense was being made which was inconsistent with the confession. There is no such charge in the accusation, and our present knowledge as to what defense *was* made is not to be attributed to Haymond. Suppose Hoff was defended by honest and able counsel, as we must presume he was, and that upon a full statement of his case, and a consideration of the evidence, he had been advised, and himself believed, that he had no defense except the plea of insanity. Suppose his line of defense had been fully determined upon, and also that it involved a full admission of the fact of the homicide. Upon that supposition, it would be difficult to specify what there was wrong in the conduct of the respondent. True, most attorneys would scorn to act as brokers in such a case. But we are not trying questions of taste.

It is true no such facts are stated in the accusation, but the question on demurrer is, Does the accusation negative the possibility of innocence?

And then we are not to attribute knowledge to the accused of the wrong on the part of McIntosh unless it is so averred. Why should we presume that Hoff had been imposed upon, or that the alleged confession was bogus, or that its publication

would interfere with any defense that would be made; or, if all these possible facts were true, that Haymond knew of them?

It is always an unpleasant thing to disbar an attorney. The committee have stated their reluctance to move in the matter. They have presented their views fairly and with malice to none. And, although convinced that the charge should not be sustained, I think the committee deserve the gratitude of the courts and of the profession for the manner in which they have performed their unpleasant duty.

The accusation is dismissed.

Harrison, J., Van Fleet, J., McFarland, J., Henshaw, J., Garoutte, J., and Beatty, C. J., concurred.