[L. A. No. 12442. In Bank.—December 31, 1930.]

FRAZIER McINTOSH, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Charles C. Montgomery, Richard F. Bailey, Hal Hughes and Hill & Morgan for Petitioner.

Thatcher J. Kemp for Respondent The State Bar of California.

THE COURT.—This is a proceeding to review the findings and the recommendation of the Board of Governors of The State Bar of California that the petitioner be disbarred from the practice of the law in all the courts of this state.

The decision of the board and of the local committee is claimed to be erroneous on the ground that the State Bar Act (Stats. 1927, p. 38) violates section 13, article I, of the California state Constitution in that the proceedings provided by it do not constitute due process of law and that the act violates certain sections of the United States Constitution or amendments thereto. It is also contended that certain findings of the Board of Governors and of the local committee are outside of any issue tendered by the pleadings and that the evidence is insufficient to support the findings.

We may at the outset remove from consideration the first ground presented, inasmuch as the questions attempted to be raised thereby have been settled adversely to the petitioner's contentions. (*State Bar* v. *Superior Court,* 207 Cal. 323 [278 Pac. 432]; *In re Cate,* 207 Cal. 443 [279 Pac. 131]; *Matter of Shattuck,* 208 Cal. 6 [278 Pac. 998]; *Matter of Richardson,* 209 Cal. 492 [288 Pac. 669].) In this connection the petitioner also claims that his rights were violated by reason of the fact that over his objection he was compelled to testify and submit to cross-examination at the instance of the local committee. The contention in

this regard is made that the proceeding before the local committee is in the nature of a criminal proceeding wherein a defendant may not be compelled to testify against his will. While this ground of objection appears to have been waived before the committee, it may nevertheless be said that it is fully met by the decision in the case of *In re Vaughn,* 189 Cal. 491 [24 A. L. R. 858, 209 Pac. 353], wherein the same contention was answered by the statement that "This position cannot be maintained. Although it has been held that an accusation is in the nature of a criminal charge (*Matter of Hammond,* 121 Cal. 385 [53 Pac. 899]), and that a proceeding on such a charge is a *quasi*-criminal action (*In re McCowan,* 177 Cal. 93 [170 Pac. 1100]), 'this court has uniformly treated disbarment proceedings as peculiar to themselves, and governed exclusively by the code sections specifically covering them'. (*Matter of Danforth,* 157 Cal. 425 [108 Pac. 322].) The purpose of such a proceeding is to determine the fitness of an officer of the court to continue in that capacity, and it has been said the disbarment of attorneys is not intended for the punishment of the individual but for the protection of the courts and the legal profession. (*Ex parte Finley,* 97 S. C. 37 [81 S. E. 279].)"

It is also contended that the committee erred in calling the petitioner's stenographer over his objection in violation of section 1881 of the Code of Civil Procedure, providing that an attorney's secretary, stenographer or clerk may not be examined, without the consent of his employer, concerning any fact the knowledge of which has been acquired in such capacity. The record discloses that the stenographer was not examined as to any fact the knowledge of which was acquired in her capacity as the petitioner's stenographer, but was, in fact, examined in her capacity and in relation to transactions in which she participated or of which she had knowledge by virtue of her capacity as the secretary of the Mayer Investment Company.

Neither do we perceive any merit in the second ground presented. While the findings were not drawn to follow the language of the accusations and allegations contained in the verified complaint filed with the committee, nevertheless those objected to were related or were collateral to the main issues. The record shows that one amendment

to the complaint was made during the course of the hearing, the evidence as to which the petitioner was given ample opportunity to meet. It also appears that the committee consistently ruled out and refrained from considering any offers of inadmissible evidence and based its conclusions on legal evidence alone, and that the rights of the petitioner, as defined by the decision in *Matter of Richardson, supra,* to a decision of the committee and the board based on competent and legal evidence have not been violated.

The remaining contention is whether the evidence is sufficient to support the findings and the conclusions reached by the Board of Governors.

The petitioner was admitted to practice law at the bar of this state in 1917 and at the time of the hearing in this matter was pursuing the practice of the law in the city of Los Angeles. The complainant before the local committee, Mildred M. Sutliff, is the daughter of James B. Mayer, who in his lifetime created and became the principal stockholder and officer of the Mayer Investment Company, a California corporation. James B. Mayer died on October 5, 1923, and left surviving him his daughter, Mildred M. Sutliff, and two sons, Jay Mayer, an adult and full brother of Mildred, and James B. Mayer, Jr., at that time nine years of age, a half-brother of Mildred and Jay. Prior to James B. Mayer's death, the petitioner had been acting as attorney for the Mayer Investment Company.

On October 11, 1923, Mildred M. Sutliff filed a petition for letters of administration on her father's estate, on which application the petitioner acted as her attorney. She also in the same month filed a petition for letters of guardianship of the person and estate of James B. Mayer, Jr., also on this application being represented by the petitioner. The latter estate consisted mainly of the proceeds of a $4,000 insurance policy on his father's life of which James B. Mayer, Jr., was the beneficiary. The petitioner continued to act as the attorney for the Mayer Investment Company.

On October 10, 1923, the petitioner and C. N. Hayes, an uncle of Mildred M. Sutliff, were appointed trustees of the Mayer Investment Company, with a power of attorney to transact its business, and they continued as such trustees until their discharge by the directors in June, 1924. In

the latter month, or prior thereto, the petitioner became a stockholder of the company. On June 27, 1924, a directors' meeting was held in which, among the first order of business, the board elected the petitioner and C. N. Hayes as directors to fill vacancies caused by directors resigning. The petitioner was present and participated at this meeting. Practically the next order of business as shown by the minutes was the election of the petitioner as treasurer of the company. About the last order of business of the meeting was a discussion of a bill of $6,500 for services as attorney and as trustee rendered by the petitioner, over which there had been some dispute and protest, and a settlement thereof by the adoption of the following resolution:

"Whereas in the opinion of the directors of the Mayer Investment Company, it is for the best interests of the company that the regular officers assume active management, control and operation of its affairs, Be It Resolved, That the trustees, Frazier McIntosh and C. N. Hayes, be and are hereby released from all authority and obligation vested in them as trustees, and Be It Further Resolved, That the Power of Attorney granted the trustees be and hereby is terminated, and that the future operation of the company's affairs be through the regular officers of the company as set forth in the by-laws. Be It Further Resolved, That Mr. McIntosh's bill of $6,500 be approved, same to be payment in full for services to date as trustee and attorney for the company, which amount is to be paid as follows: $1,250 at the end of this meeting, $250 on the first of January, 1925, and $5,000 on or before three years from date, no interest to be paid on said $5,000."

A resolution was also adopted changing the company's principal place of business from Los Angeles to Corcoran, California. An additional resolution was passed that the petitioner be continued as the attorney for the company to serve without charge except in case of a suit. The sum of $1500 was paid pursuant to the foregoing resolution.

Subsequent to the time when Mildred M. Sutliff was appointed administratrix of the estate of her father and guardian of the estate of her brother, and while the petitioner was acting as the attorney and cotrustee for the Mayer Investment Company, and upon the petitioner's advice and

suggestion and with his consent and approval, $4,000 cash from the minor's estate was loaned to the Mayer Investment Company and a mortgage on a crop of cotton executed by the company was given as security therefor. No permission to make this loan, nor any approval or confirmation thereof, was sought or obtained from the probate court. The cotton crop failed and early in 1925 further discussion of security for the loan of $4,000 from the minor's estate was had and it was concluded again with the consent and approval of the petitioner, that a second mortgage on the Whitley building in Corcoran, occupying lots 9, 10, 11 and 12 in block 31 of that city, owned by the Mayer Investment Company, be executed as security. The property was deemed to have a market value of about $30,000 on which there was a prior recorded encumbrance of $22,600 to which the mortgage to secure the $4,000 loan, executed on February 1, 1925, by Mildred M. Sutliff as president and Jay Mayer as secretary, and delivered to Mildred M. Sutliff as guardian, was made subject. It was in evidence that when asked by the guardian whether the mortgage should be recorded, the petitioner replied that it would not be necessary, as the only persons who could sign a deed to the property were herself and her brother. The mortgage was never acknowledged nor recorded, nor was any application ever made to the probate court to approve or confirm the loan and the taking of the second mortgage on the Whitley building as security.

Shortly subsequent to these events Mrs. Sutliff left Corcoran to reside in Chula Vista, California. She testified that at that time she effected the election of her brother, Jay Mayer, as president, and her uncle, C. N. Hayes, as secretary of the company, so that the affairs of the company could still be carried on in her absence by members of the family. Although Mrs. Sutliff remained a director of the corporation she ceased to attend directors' meetings.

In the meantime the affairs of the corporation were becoming more embarrassed financially and creditors were pressing for payment of their demands. On May 31, 1927, the petitioner mailed from Los Angeles to Jay Mayer at Corcoran a letter in which, among other things, he wrote: "I find that the by-laws of the corporation provide for a regular meeting of the board of directors to be held the first

Wednesday of each month. As this comes tomorrow, I have made up the minutes of a meeting and a resolution authorizing the deed of the Whitley building. I have also prepared and am enclosing the deed. As soon as this is done you may file this letter as my personal undertaking to see that Jimmy gets his money in full. I think this action is imperative as I feel sure the National City Bank are preparing an immediate attachment of everything in sight. I hope to stall them off 48 hours while we can get this through. . . . P. S. Return the deed for notarial signature here. Don't forget corporation seal. Record Jimmy's mtg.''

The directorate of the company consisted of four members, two of which constituted a *quorum*. The minutes of the meeting written as held on June 1, 1927, at 10 o'clock A. M., at the company's office, which then was relocated at Los Angeles at the office of the petitioner, recite: ''A regular meeting of the board of directors of the Mayer Investment Company was held at the company's office the 1st day of June, 1927, at the hour of 10 o'clock a. m. The following directors were present: Jay Mayer and Frazier McIntosh. C. N. Hayes, the secretary, being absent, R. H. Golish was, by unanimous resolution, appointed acting secretary.

''Upon motion duly made and carried, the following resolution was unanimously adopted:

''Whereas, this corporation is indebted to Frazier McIntosh in the sum of $5,000 upon an account stated for legal services incurred more than three years ago; and whereas, said account is now due; and whereas, Frazier McIntosh has agreed to accept a deed to lots 9, 10, 11 and 12, in block 31, of the city of Corcoran, as per map of the townsite of Corcoran, recorded in Book 1, page 85 of Maps, in the office of the county recorder of said county, in full satisfaction of said account and in full satisfaction of all other claims and demands which he has against this corporation; therefore, Be It Resolved, That this corporation, in consideration of the foregoing, execute its deed to the said lots to the said Frazier McIntosh, or his assigns.''

R. H. Golish was the petitioner's secretary and stenographer. It was in evidence and established that Jay Mayer was in Corcoran on June 1, 1927. The deed which

was executed pursuant to that resolution was prepared by the petitioner, was signed and acknowledged by Jay Mayer as president and R. H. Golish as acting secretary, and ran to and was delivered to H. H. Krauch, a friend of the petitioner, as grantee. The deed did not mention nor was it drawn subject to the $4,000 second mortgage. On June 3, 1927, H. H. Krauch, as the assignee of the petitioner, filed a complaint in the Superior Court in and for Los Angeles County on an account stated to recover from the Mayer Investment Company the sum of $4,000 alleged to be due to Frazier McIntosh for professional services, together with interest from the first day of May, 1924. An attachment in that action was levied on the Whitley building and judgment by default was entered on July 13, 1927, for $4,896.78 and costs. In that action Krauch was represented by an attorney who was an office associate of the petitioner.

Subsequently the petitioner effected a grant of the Whitley building to Mrs. Harriette E. Wheeler, who was his client, in exchange for 100 acres of encumbered ranch property in Riverside County. Title to the ranch property at the petitioner's request was taken in the name of E. E. Steuri. Shortly prior to the hearing before the local committee the ranch property was conveyed to El Serita Land Corporation, a California corporation newly formed by the petitioner and in which he expected to be the owner of practically all of the stock. Mrs. Harriette E. Wheeler remained the owner of the Whitley building until two days before her death, when under a power of attorney from Mrs. Wheeler the petitioner deeded the Whitley building to a Mrs. J. B. Kneeben. Mrs. Wheeler was an elderly woman who had been suffering from a paralytic stroke. She suffered an additional stroke about forty-eight hours before she died. The consideration for the conveyance from Mrs. Wheeler to Mrs. Kneeben was an undertaking on the part of the latter to pay to the former the sum of $1,000 per month during Mrs. Wheeler's lifetime, but not to exceed the period of one year. The sum of $1,000 was accordingly paid upon execution of the deed and Mrs. Wheeler's death two days later terminated the obligation to make further payments. Subsequent to Mrs. Wheeler's death the petitioner offered for probate the will of Mrs. Wheeler by which he was made the principal beneficiary of her estate.

The petitioner concedes that the security for the obligation of the $4,000 loan from the estate of James B. Mayer, Jr., is lost. He also concedes that the obligation is his own and expresses his intention to pay it, although he states that he has not set aside any property to cover or secure payment of the amount due. The petitioner paid the interest on the amount of the obligation up to January, 1928, and admits that he then ceased making interest payments because of his financial inability to meet them.

We are at a loss to understand on what ground the petitioner could expect condonement at the hands of The State Bar or of this court for the results brought about by his own activities, viz., a loss of the minor's estate. The petitioner takes the position that unless there was a motive or intent to defraud, he is entitled to remain in practice as a lawyer and officer of the courts of this state. He contends that his motive was to protect the minor's interest, which he states is evidenced by his request of May 31, 1927, that "Jimmy's" mortgage be recorded. It will be remembered that the mortgage at that time was unacknowledged, that the officers of the company had since been changed, and that the mortgage was in the possession of another than the recipient of the letter of May 31, 1927. We also have the petitioner's own statement before the local committee: "I said to Mr. Krauch that we were endeavoring at that time to prevent the National City Bank getting in ahead of me. I felt I was entitled to my pay, and it was a deliberate move on my part to get in ahead of the other fellows. Mr. Owen: You were primarily interested in protecting yourself? A. No question about it. . . . I told them I would be willing to reconvey the property, if they would give me the money owing."

We cannot escape the conclusion that motive and intent to defraud the minor is evidenced by the petitioner's manipulations of the Whitley building transactions. He knew that the $4,000 of the minor was loaned without authority of court. He knew that the mortgage on the Whitley building, prepared by himself and securing the $4,000 had been executed and withheld from record at his suggestion. He knew that the deed prepared by him and conveying that building to Krauch, his dummy, was silent as to the unrecorded second mortgage of the minor. Admittedly the peti-

tioner was bent upon a prior satisfaction of his own claim to the exclusion of the minor's interest. It must be held that his conduct discloses a deliberate attempt on his part to defeat the secured claim of the minor which he was bound, professionally and in good morals, to protect, and that the petitioner's machinations with reference to the transfer of title to the Whitley building to his own benefit involved a deliberate evil purpose and resulted in acts of moral turpitude.

Evidence was introduced with relation to other matters complained of, but these matters it is not necessary herein to discuss in detail. It may be said that if no other than the latter matters were involved the record would not justify a judgment of disbarment. But it is apparent from the record that the recommendation of the board was not based on those matters, but primarily was the outcome of the events and activities herein narrated. According to the petitioner every favorable inference and intendment, we must conclude that he has not met the burden imposed upon him by section 26 of the State Bar Act of showing wherein the decision of the Board of Governors is erroneous or unlawful.

It is ordered that the petitioner, Frazier McIntosh, be and he is hereby disbarred from the further practice of the law in this state as an attorney and that his name be stricken from the roll of attorneys at law of the state of California.

Rehearing denied.