[L. A. No. 17634. In Bank.—March 6, 1941.]

WILLIAM L. WEBSTER, Appellant, v. BOARD OF DENTAL EXAMINERS OF CALIFORNIA, Respondent.

Charles E. Burch, Jr., and Irwin R. Hazen for Appellant.

Robert W. Kenny and Morris E. Cohn, as *Amici Curiae,* on behalf of Appellant.

H. E. Lindersmith for Respondent.

Anthony J. Kennedy, as *Amicus Curiae,* on Behalf of Respondent.

GIBSON, C. J.—This is an appeal from the decision of the Superior Court of San Diego County which denied appellant's petition for a writ of mandate to compel the respondent Board of Dental Examiners to reinstate his license to practice dentistry. In accordance with the provisions of the Business and Professions Code, sections 1670–1680, appellant's license was suspended by the board for a period of six months for unprofessional conduct. Appellant sought to review the board's order by this proceeding in *mandamus.* It was alleged in the petition that the statute was unconstitutional; that there was no evidence to support the findings of the Board; that if there was any evidence, it was wholly insufficient because the proceeding was quasi-criminal in character; that the board acted beyond its jurisdiction; that the board was biased; and that the board considered matters not properly before it. Each of these allegations was denied in the return to the alternative writ, and after a hearing on the record of the proceedings before the board, the Superior Court rendered its judgment denying the relief sought. Findings of fact were expressly waived by the parties in open court.

Upon this appeal only three of these asserted errors are urged: (1) That there was no evidence before either the Superior Court or the board to justify the order made; (2) that in view of the quasi-criminal nature of the proceeding the evidence was insufficient to justify the order made; and (3) that the board exceeded its jurisdiction by failing to make proper findings upon which to base its order of suspension.

The Board of Dental Examiners is a statutory body, consisting of seven members of the profession and charged with the duty of administering the provisions of the Dental Practice Act. (Business and Professions Code, secs. 1600–1752.) A similar board has existed in California since 1885 (Stats. 1885, p. 110) for the purpose of examining applicants and granting licenses to practice dentistry to properly qualified persons. Since 1909 the board has had the power to re-

voke or suspend licenses for specified causes. (Stats. 1909, p. 806.) The revocation and suspension of professional licenses to practice dentistry by such an administrative board is sanctioned by long practice in this state and by the decisions of this court. (*Jacobs* v. *Board of Dental Examiners,* 189 Cal. 709 [209 Pac. 1006]; *Homan* v. *Board of Dental Examiners,* 202 Cal. 593 [262 Pac. 324]; *Painless Parker* v. *Board of Dental Examiners,* 216 Cal. 285 [14 Pac. (2d) 67].) In 1937 the Legislature revised the Dental Practice Act and sought to specify with more particularity the kind of activity which comprises "unprofessional conduct" and thus constitutes grounds for the revocation or suspension of a license by the board. (Stats. 1937, p. 1248; Business and Professions Code, sec. 1680.) In the present case appellant was charged with unprofessional conduct within three of the statutory definitions: (1) "The advertising of professional superiority or the performance of professional services in a superior manner" (sec. 1680 [12]); (2) "The making use of any advertising statements of a character tending to deceive or mislead the public" (sec. 1680 [11]); and (3) "The advertising to guarantee any dental service . . . " (sec. 1680 [17].)

Appellant first challenges the order of suspension on the theory that administrative proceedings to revoke a professional license are quasi-criminal in nature. It is suggested that the rules governing burden of proof, and *quantum* of proof must be those which apply in criminal trials, and that in consequence the board used an improper standard in weighing the evidence. This analogy between a proceeding to revoke a license and a criminal trial is found in a number of the earlier cases. In some of the decisions, however, language describing the revocation of a license as penal in nature is entirely inapplicable to an administrative proceeding brought for that purpose, because in the particular case the legislature had provided for forfeiture of the professional license as an extra penalty to be added by the criminal court after a conviction for violation of the statute. (See *Cavassa* v. *Off,* 206 Cal. 307, 312 [274 Pac. 523].) In some states such a criminal proceeding is the ordinary way of accomplishing the revocation of a professional license. (See *Commonwealth* v. *Brown,* 302 Mass. 523 [20 N. E. (2d) 478].)

Where, on the other hand, the legislature has created a professional board and has conferred upon it power to ad-

minister the provisions of a general regulatory plan governing the members of the profession, the overwhelming weight of authority has rejected any analogy which would require such a board to conduct its proceedings for the revocation of a license in accordance with theories developed in the field of criminal law. (*Suckow* v. *Alderson,* 182 Cal. 247 [187 Pac. 965]; *Lanterman* v. *Anderson,* 36 Cal. App. 472 [172 Pac. 625]; *Ramsay* v. *Shelton,* 329 Ill. 432 [160 N. E. 769]; *Spurgeon* v. *Rhodes,* 167 Ind. 1 [78 N. E. 228]; *Meffert* v. *State Board,* 66 Kan. 710 [72 Pac. 247, 1 L. R. A. (N. S.) 811], affirmed *per curiam* 195 U. S. 625 [25 Sup. Ct. 790, 49 L. Ed. 350]; *In re Smith,* 10 Wend. [N. Y.] 449; *State ex rel. Hagen* v. *Superior Court,* 139 Wash. 454 [247 Pac. 942]; *State* v. *Schaeffer,* 129 Wis. 459 [109 N. W. 522]; *Reetz* v. *Michigan,* 188 U. S. 505, 509 [23 Sup. Ct. 390, 47 L. Ed. 563]; *Butcher* v. *Maybury,* 8 Fed. (2d) 155. See 9 Wigmore, Evidence [3d ed.], sec. 2498, pp. 327, 328; 48 C. J. 1101, sec. 73; 11 Cal. L. Rev. 273, 275.) Many California cases have expressly rejected the contention that administrative proceedings for the revocation of a professional license are to be governed by criminal law theories on matters of evidence. (*Suckow* v. *Alderson, supra,* p. 251; *In re Vaughan,* 189 Cal. 491, 496 [209 Pac. 353, 24 A. L. R. 858]; *Lanterman* v. *Anderson, supra,* 36 Cal. App. at p. 478; *Thrasher* v. *Board of Medical Examiners,* 44 Cal. App. 26, 29 [185 Pac. 1006]; *Winning* v. *Board of Dental Examiners,* 114 Cal. App. 658, 664 [300 Pac. 866]; *Anderson* v. *Board of Medical Examiners,* 117 Cal. App. 113, 117 [3 Pac. (2d) 344]; *Jameson* v. *Board of Dental Examiners,* 118 Cal. App. 105 [5 Pac. (2d) 47]; *Bold* v. *Board of Medical Examiners,* 135 Cal. App. 29, 34 [26 Pac. (2d) 707]; *Traxler* v. *Board of Medical Examiners,* 135 Cal. App. 37, 39 [26 Pac. (2d) 710]; cf. *Gipner* v. *State Civil Service Com.,* 13 Cal. App. (2d) 100, 106 [56 Pac. (2d) 535].) The same rule is applied in administrative proceedings preliminary to orders of disbarment or suspension of attorneys. Despite early cases which speak in general terms of the analogy to a criminal prosecution (see *Matter of Haymond,* 121 Cal. 385 [53 Pac. 899]), the rule that criminal law theories on matters of evidence are inapplicable to such proceedings was established at a time when disciplinary proceedings were still a matter for the courts alone (*In re Vaughan, supra*), and it has been followed since the adoption of the administrative procedure upon which orders of disbar-

ment or suspension are at present based. (*In re Winne,* 208 Cal. 35, 41 [280 Pac. 113]; *McIntosh* v. *State Bar,* 211 Cal. 261, 263 [294 Pac. 1067]; *Fish* v. *State Bar,* 214 Cal. 215, 222 [4 Pac. (2d) 937]; *Marsh* v. *State Bar,* 2 Cal. (2d) 75, 78 [39 Pac. (2d) 403]; *Johnson* v. *State Bar,* 4 Cal. (2d) 744, 758 [52 Pac. (2d) 928]; *Waterman* v. *State Bar,* 14 Cal. (2d) 224, 227 [93 Pac. (2d) 95]; 9 Cal. Jur. Ten-year Supp. 429 et seq.)

Some of the cases relied upon by appellant are clearly distinguishable. Thus, *Cavassa* v. *Off, supra,* is not in point because there the legislature actually contemplated a criminal prosecution. The statement in *Messner* v. *Board of Dental Examiners,* 87 Cal. App. 199, 205 [262 Pac. 58], that such a proceeding is *quasi*-criminal, is *dictum.* In that case the court held that a reasonable construction of the statute required that where one was charged with aiding and abetting an unlicensed person to practice dentistry, it must be shown that the unlicensed person had some control over the rendering of professional services. The court said that there was an *entire absence of evidence* to show any such management of the office by an unlicensed person as the statute contemplated. (87 Cal. App. at p. 204.) This lack of evidence upon a material issue required the annulment of the board's order. The further statement that the proceedings were *quasi*-criminal in nature is *dictum* which is contradicted so far as it relates to matters of evidence by the long line of cases cited above. *Randall* v. *Board of Medical Examiners,* 110 Cal. App. 61, 64 [293 Pac. 790], does not apply theories of criminal law to matters of evidence. The few remaining decisions which contain language tending to support petitioner's view are contrary to the great weight of authority in California and elsewhere, as pointed out above.

The second contention of appellant is that there was "no evidence whatsoever" before either the board or the Superior Court to support the order of suspension. It should be observed here that this is an appeal from a judgment of the Superior Court denying relief to the appellant, and upon familiar principles this court need inquire only whether there was evidence of a substantial nature to support the judgment of the court below. (*Tupman* v. *Haberkern,* 208 Cal. 256, 262 [280 Pac. 970]; *Thom* v. *Stewart,* 162 Cal. 413, 420 [122 Pac. 1069]; 2 Cal. Jur. 912 et seq.) Similarly, where rea-

sonable minds might differ on the inferences to be drawn from a particular set of facts, the appellate court will not substitute its own conclusions for those reached by the trial court. (*Hamilton* v. *Pacific Elec. Ry. Co.,* 12 Cal. (2d) 598, 603 [86 Pac. (2d) 829]; *Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421, 426 [213 Pac. 42, 26 A. L. R. 123]; *Hughes* v. *Quackenbush,* 1 Cal. App. (2d) 349, 354 [37 Pac. (2d) 99]; *Hales* v. *Snowden,* 19 Cal. App. (2d) 366, 372 [65 Pac. (2d) 847].)

 The evidence in the instant case included the advertisement itself and the testimony of appellant. If either the advertisement or the testimony offers any substantial support for the conclusion of the court below, the judgment must be affirmed. Appellant's argument is, in substance, that the advertising statements admittedly made by him do not constitute a violation of the terms of the statute. The language used by the appellant and the circumstances under which it was used are admitted. The application of the legal standard prescribed by the statute to the admitted facts requires a construction of the statutory provisions upon which both the board and the court below were in agreement.

We need consider only two of the board's determinations: first, that the statements in the advertisement constituted "advertising to guarantee" dental service; second, that they were "of a character tending to deceive or mislead the public." As to the first, the advertisement contained the following statements: "This new material . . . will absolutely not change in color. Does not stain from smoking, alcohol, or alkaloids, will not shrink or warp", and also, "These new dental plates are so ably designed that Dr. Webster challenges you to detect any false appearance . . . Each tooth is set so that it appears to be growing there. . . . " It also said, "Dr. Webster's Immediate Restoration Dentures or plates are faithful reproductions of your own natural gums and teeth, in their true color, size and form. These plates are made to defy detection . . . most intimate friends need not know that you are wearing artificial teeth." Appellant's defense to this part of the charge, as nearly as can be discerned from his brief, is that the statements do not amount to a binding guarantee, and are too general to come within the statutory prohibition. It is plain that if his view were accepted, and the rules of contract thus imported into the statute, the purpose

of the law would be defeated. The legislative intention is clearly seen in this and other portions of the statute. It was designed to prohibit advertising which induced the reader to believe that the dentist proposed to guarantee a particular result. The statute does not merely forbid a contractual guarantee of a particular dental service, but instead prohibits *any* "advertising to guarantee any dental service", that is, advertising which represents that a guarantee may be forthcoming. Under this interpretation, the conclusion of the board and the trial court that the statements constitute a violation of the statute must be sustained.

The board further determined that the advertisement had a character tending to deceive or mislead the public. A few statements quoted thereform will demonstrate the reasonableness of this conclusion. Appellant said, among other things, "DR. WEBSTER'S IMMEDIATE RESTORATION PLATE MATERIAL WEIGHS LESS THAN I OZ. This beautiful plate material . . . made from a secret formula, is a development of dental science which many plates wearers have been thankful for," and also, "Have Your Dental Plates Made 'The Webster Way' of IMMEDIATE RESTORA-TION." The ordinary reader is given the unmistakable impression by this language that appellant used a secret type of plate material not generally available, and that his plates were made according to a unique method called " 'The Webster Way' of IMMEDIATE RESTORATION". Appellant testified, however, that he had no secret material not available to the entire profession, and that his methods were no different from those in general use.

On this phase of the case appellant advances the contention that only statements which are untrue are within the prohibition of the statute, and that these particular statements in the advertisement were not proven to be untrue. This contention wholly overlooks both the language and the purpose of the statute. The act refers to statements "of a character *tending* to deceive or *mislead* the public." (Business and Professions Code, sec. 1680 [11].) It has been recognized in recent years that the evils of deceptive advertising cannot be reached effectively if legislation to that end is interpreted to require proof of actual reliance upon a false statement knowingly made, as in a common law action in deceit. (See Handler, "False and Misleading Advertising", (1929) 39 Yale L. J.

22; 53 Harv. L. Rev. 828; 31 Mich. L. Rev. 804.) Even in criminal statutes using such words as "false *or misleading*", some courts have recognized and upheld the intention of the legislature to prohibit something more than merely those advertisements which are untrue. (*Taylor* v. *United States,* 80 Fed. (2d) 604, 605; *People* v. *Wahl,* 39 Cal. App. (2d) Supp. 771, 773 [100 Pac. (2d) 550]; cf. *Commonwealth* v. *Ferris,* 305 Mass. 233, 25 N. E. (2d) 378, 380; *Jasnowski* v. *Judge of Recorder's Court,* 192 Mich. 139 [158 N. W. 229], 89 A. L. R. 1004.) In the field of ordinary commercial advertising, regulatory agencies which are charged with the duty of combating false or misleading advertising are not required to prove that the particular deceptive statements are actually false. (*United States* v. *95 Barrels of etc. Vinegar,* 265 U. S. 438, 442 [44 Sup. Ct. 529, 68 L. Ed. 1094]; *Caldwell, Inc.,* v. *Federal Trade Com.,* 111 Fed. (2d) 889, 890; *General Motors Corp.* v. *Federal Trade Com.,* 114 Fed. (2d) 33, 36; cf. *Belmont Laboratories, Inc.,* v. *Federal Trade Com.,* 103 Fed. (2d) 538, 541; 31 Mich. L. Rev. 804, 815.)

In view of the conclusion reached under similar statutes regulating ordinary commercial advertising, it would be unthinkable to accord a more stringent construction to a statute regulating one of the learned professions so intimately connected with public health and safety. In discussing an identical statute Chief Justice Hughes said, "The legislature was not dealing with traders in commodities, but with the vital interest of public health, and with a profession treating bodily ills and demanding different standards of conduct from those which are traditional in the competition of the market place. The community is concerned in providing safeguards . . . against practices which would tend to demoralize the profession by forcing its members into an unseemly rivalry which would enlarge the opportunities of the least scrupulous. What is generally called the 'ethics' of the profession is but the consensus of expert opinion as to the necessity of such standards." (*Semler* v. *Oregon State Board of Dental Examiners,* 294 U. S. 608, 610 [55 Sup. Ct. 570, 79 L. Ed. 1086].) This interpretation finds an abundance of support elsewhere in cases dealing with similar statutes. (*State Board of Dental Examiners* v. *Miller,* 90 Colo. 193 [8 Pac. (2d) 699], appeal dismissed 287 U. S. 563 [53 Sup. Ct. 6, 77 L. Ed. 496]; *Commonwealth* v. *Brown,* 302 Mass. 523 [20 N. E. (2d) 478]; cf.

*Sherman* v. *State Board of Dental Examiners,* (Tex. Civ. App.) 116 S. W. (2d) 843, 847, hearing den. 130 Tex. 657; *Craven* v. *Bierring,* 222 Iowa 613 [269 Pac. 801]; *Donahue* v. *Andrews,* 150 Or. 652 [47 Pac. (2d) 940]; *Modern System Dentists, Inc.,* v. *State Board of Dental Examiners,* 216 Wis. 190 [256 N. W. 922]. See, also, *Dr. Bloom Dentist, Inc.,* v. *Cruise,* 259 N. Y. 358 [182 N. E. 16]; *Semler* v. *Oregon State Board of Dental Examiners,* 148 Or. 50 [34 Pac. (2d) 311].)

■ The third contention of appellant is that the order was void because the board failed to make proper findings to support it, and that the judgment of the Superior Court upholding the order was therefore erroneous. This point was not developed in the briefs of either party and no cases are cited to sustain appellant's position. Because of this omission alone we could, with propriety, affirm the judgment below as to this contention without further discussion. (*Title G. & T. Co.* v. *Fraternal Finance Co.,* 220 Cal. 362, 363 [30 Pac. (2d) 515]; *Bradley* v. *Butchart,* 217 Cal. 731, 747 [20 Pac. (2d) 693]; *Duncan* v. *Ramish,* 142 Cal. 686, 690 [76 Pac. 661].) But if we consider the proposition on the merits, appellant is in no better position. The board did make its findings, and what appellant complains of is not that there was an absence of findings, but that they were defective. The actual findings incorporated by reference the language of the accusation which initiated the proceeding against petitioner. It is well settled that general findings in the words of the complaint are a sufficient compliance with the requirement of making findings of fact. (*Dam* v. *Zink,* 112 Cal. 91, 93 [44 Pac. 331]; *Turner* v. *Turner,* 187 Cal. 632, 636 [203 Pac. 109]; *California Canning Peach Growers* v. *Williams,* 11 Cal. (2d) 221, 232 [78 Pac. (2d) 1154]; *Scarborough Co.* v. *Colver,* 73 Cal. App. 435, 439 [238 Pac. 1102]; 24 Cal. Jur. 984 et seq.) The findings here were clearly sufficient under this rule, and the statute imposes no additional or more specific requirement as to the form in which the finding of the board must be put. It states only that a license may be revoked or suspended for specified causes. This is, of course, a requirement that the board find the existence of at least one of the grounds specified as a basis for its order. (Cf. *Elite Dairy Prod., Inc.,* v. *Ten Eyck,* 271 N. Y. 488, 498 [3 N. E. (2d) 606]; *Douglas* v. *Noble,* 261 U. S. 165, 169 [43 Sup. Ct. 303, 67 L. Ed. 590].) Though the reviewing court might prefer to have the grounds

for the board's determination stated in complete detail, including findings as to specific portions of the questioned advertisement, we cannot imply the necessity for such detailed findings in the absence of a statutory requirement. (See *United States* v. *B. & O. R. R. Co.*, 293 U. S. 454, 464 [55 Sup. Ct. 268, 79 L. Ed. 587]; *Southern Pac. Co.* v *Railroad Com.*, 13 Cal. (2d) 89, 107, 112 [87 Pac. (2d) 1055]. Cf. *Homan* v. *Board of Dental Examiners*, 202 Cal. 593, 594, 595 [262 Pac. 324]; *Bold* v. *Board of Medical Examiners*, 135 Cal. App. 29, 32 [26 Pac. (2d) 707].) Where the finding of the board, either by a restatement of the charge made or by reference to the language of the accusation, sufficiently points out the specific ground upon which it has determined that a cause for suspension or revocation exists, it cannot be said that an order so based is void, however much the court might prefer a more detailed statement of the grounds for the order. (Cf. *Elite Dairy Prod., Inc.*, v. *Ten Eyck, supra.*)

The judgment of the court below denying a peremptory writ of mandate is affirmed.

Shenk, J., Curtis, J., Traynor, J., and Edmonds, J., concurred.

CARTER, J., Dissenting.—I dissent. The effect of the majority decision is to prohibit members of the dental profession from advertising in any manner whatsoever the character or quality of service performed by them or which they are offering to the public. This is contrary to the legislative enactment upon which the decision is based. The decision, however, concedes that it is within the province of the Legislature to prescribe the acts which constitute unprofessional conduct by a dentist, including the subject of advertising.

The Legislature has not seen fit to prohibit a dentist from advertising except in the following respects:

(1) "The making use of any advertising statements of a character tending to deceive or mislead the public;

(2) "The advertising of professional superiority or the performance of professional services in a superior manner;

(3) "The advertising to guarantee any dental service. . . . " (Section 1680, Dental Practice Act of California, subdivisions 11, 12 and 17.)

By restricting the prohibition against advertising to the above-quoted provisions, it necessarily follows that in all

other respects a dentist may advertise the character or quality of service which he offers to the public.

It is a matter of common knowledge that there are many methods employed by members of the various professions to obtain patrons, customers, patients or clients. Probably the most effective method is to publish advertisements in newspapers which are read by thousands of people and to which many people refer for information to guide them in their daily walks of life. No reason has been suggested, and none has occurred to me, why an advertisement in a newspaper depicting in a fair and truthful manner the character or quality of service which a member of a profession offers to the public should be prohibited. In any event, it must be conceded that it is a matter of public policy to be determined by the Legislature as to whether or not members of a profession should be prohibited from advertising the character or quality of professional service they offer to the public, and if so, to what extent such advertising may be prohibited.

In the case at bar no attempt was made to prove that any statement contained in the advertisement published by appellant was in any respect untrue, and in the absence of evidence to the contrary, it must be assumed that the statements contained therein were true.

The majority opinion devotes much space to a discussion of whether or not a proceeding for the revocation of the license of a member of a profession is *quasi*-criminal. Such discussion is wholly beside the point and immaterial. Matters such as the burden of proof, presumption of innocence, reasonable doubt and the like are of no particular concern here. However, it is well to point out and keep in mind the gravity of the consequences flowing from the revocation of a license of a professional man. He usually spends years of his life and incurs large expense in pursuit of the knowledge requisite to the successful practice of his chosen vocation. If his license is revoked he loses all of that effort and investment. He is deprived of the right to obtain the necessities of life by the only method for which he is qualified. He suffers not only economically but socially as well; his station in life is lowered and the dignity and pride naturally a part of his professional standing is forever gone.

Under these circumstances I do not think it can be seriously questioned that the administrative board should be required

to act strictly within the terms of the statute, and a review of its determination and also of that of the superior court should be made, and the evidence carefully examined to ascertain whether a violation of the law has been perpetrated by the accused. Both the findings of the board and the superior court against the accused must be supported by substantial evidence and the conclusions drawn therefrom must be reasonable. In the case at bar, as pointed out in the majority decision, there is no conflict in the evidence. The only evidence offered was the testimony of appellant and the advertisement itself. That being the case the question presented to this court is purely one of law, and this court is fully as capable of arriving at a conclusion of whether appellant has violated the law as the dental board or the superior court. On questions of law this court is not bound by the findings or conclusions of the board or the trial court; it is legally competent to pass on the issues without regard to such findings or conclusions. It is not a case of determining an issue on conflicting evidence, or of passing on the weight of the evidence, or the credibility of witnesses. (*San Diego Trust & Savings Bank* v. *County of San Diego,* 16 Cal. (2d) 142 [105 Pac. (2d) 94].)

A review of the record in this case convinces me that there is no substantial evidence to support the conclusion that appellant was guilty of unprofessional conduct. It must be borne in mind that the statute does not forbid any and all advertising, and for that reason care should be taken to avoid so interpreting it. It is not a question of whether one is in favor of professional men advertising. Indeed, our only concern here is with what the Legislature has done in that respect. It is not the function of this court to make the law. This is purely a legislative function.

The advertisement upon which the charge against appellant was based is as follows:

"Dr. Webster offers his finest dental plates. Natural expression. The newest plate material in dentistry. This new material, although having the most delicately shaded natural gum color, will absolutely not change in color. Does not stain from smoking, alcohol or alkaloids, will not shrink or warp. Be sure your new dentures are made of this wonderful new material. SEEING IS BELIEVING. Dr. Webster invites you to SEE and TALK to former patients who will be

in his office all of this week to show you THESE BEAUTI-
FUL PLATES. Only by SEEING them can you actually
APPRECIATE their NATURAL BEAUTY. Note how they
MOLD the FEATURES back to that YOUTHFUL appear-
ance by adding charm and BEAUTY to the PROFILE.
TALK to these patients and let them tell you they EAT
·CORN OFF THE COB, EAT STEAKS and TASTE their
foods as well as they ever did. A NATURAL EXPRES-
SION. These new dental plates are so ably designed that
Dr. Webster challenges you to detect any false appearance
in either the beautifully shaded porcelain teeth or artistically
blended natural looking pink gums. Each tooth is set so
that it appears to be growing there, yet these beautiful plates
cost you very little money. . . .

"DR. WEBSTER'S IMMEDIATE RESTORATION
PLATE MATERIAL WEIGHS LESS THAN 1 OZ.

"This beautiful plate material which forms the gums and
the main body of Dr. Webster's Natural Appearing Dental
Plates has a new natural GUM–PINK color which looks just
like real healthy gums. Made from a secret formula, is a
development of dental science which many plate wearers have
been thankful for. Is particularly adaptable to difficult cases,
since it weighs LESS THAN ONE OUNCE, enabling Dr.
Webster to fashion a plate which will fill out the cheeks, and
fit properly without being heavy or bulky.

"Have your dental plates made 'the Webster Way' of
immediate restoration. You need not be without your teeth
for even one hour, or lose a single day's employment. Dr.
Webster's immediate restoration dentures or plates are faith-
ful reproductions of your own natural gums and teeth, in
their true color, size and form. These plates are made to
defy detection—so much so that members of your immediate
family or most intimate friends need not know that you are
wearing artificial teeth. Why suffer the embarrassment of
being without your teeth even one hour.

"Is your mouth difficult to fit? No matter how little you
pay for your dental plates at Dr. Webster's an individual
study of your case is always made. There is no limit to the
care used in fitting difficult cases. Great care is taken not
to cause wrinkles, drooping mouth, unnecessary lines, un-
natural expression, etc., when making these new beautiful

plates. . . . 'See Dr. Webster today' and have your dental needs cared for the 'Webster Way'.''

In my opinion there is nothing in the above-quoted advertisement tending to mislead the public. It cannot be doubted that the phrases "DR. WEBSTER'S IMMEDIATE RESTORATION PLATE MATERIAL WEIGHS LESS THAN 1 OZ. This beautiful plate material. . . . Made from a secret formula, is a development of dental science which many plate wearers have been thankful for. . . . Have your dental plates made 'The Webster Way' of immediate restoration'', are neither deceptive nor misleading nor tending to mislead. It is established that it is common practice among dentists to use the same material used by appellant. The material is made by a manufacturer having a secret formula. When one advertises that he uses the *same material as other dentists* use, and that such material is beautiful and is a development of dental science that people using plates appreciate, and that the material is light, he is not deceiving or misleading the public. To determine that such advertising is misleading would be to condemn the entire dental profession for using such material because if they all use it they are misleading the public by so doing. There is nothing untrue about those statements. There is no reasonable implication that appellant followed a unique procedure or used unique materials for his plates. The contrary inference flows from the statement that it is ''a development of dental science''. If it is a development of dental science generally the natural inference is that all practitioners of dental science are aware of it and follow it. It is a matter of common knowledge that each dentist has some methods and procedure which are different in varying degrees than those used by other dentists. How can the public be mislead even if we assume that there is an intimation that appellant has a certain way of doing things different than other members of his profession? At the most appellant merely advises the public that dental science has available a good plate material and that he is using that material. If anything, the advertisement might be termed generally educational, in that it broadcasts the information that persons requiring plates are able to obtain ones which are satisfactory, light, and beautiful.

There is no evidence to support the conclusion that appellant was ''advertising to guarantee dental service''. The

majority opinion refers to the following phrases in this advertisement as containing an advertisement to guarantee dental service: "This . . . material . . . will absolutely not change in color. Does not stain from smoking, alcohol or alkaloids, will not shrink or warp. . . . These new dental plates are so ably designed that Dr. Webster challenges you to detect any false appearance. . . . Each Tooth is set so that it appears to be growing there. . . . Dr. Webster's immediate restoration dentures or plates are faithful reproductions of your own natural gums and teeth, in their true color, size and form. These plates are made to defy detection . . . most intimate friends need not know that you are wearing artificial teeth." The most that can be said of those statements is that the plates and material are satisfactory. If that is a guarantee, then every advertisement is one. A dentist merely stating that he did good or satisfactory work would be advertising a guarantee of his services. An advertisement consisting of merely the dentist's name and the college from which he graduated or how long he had practiced would carry the implication that if you became his patient you would obtain satisfactory service. This is contrary to the legislative intent. As above stated the Legislature carefully refrained from forbidding all advertising. By stating that the material, which is used by the dental profession generally, will not stain, etc., there is no guarantee of "dental service" mentioned in the law. The most that could be said is that such *material* will not stain. Material is not services. Services are personal, mental or physical acts. The remainder of the phrases are merely expressions of an opinion and could in no sense be considered a guarantee. In order to constitute a guarantee there must be a positive assurance that a definite fact will obtain, or that a definite result will be accomplished.

Although the majority opinion does not discuss the charge of advertising professional superiority, there is likewise no evidence supporting that charge. The board and trial court found appellant guilty of that charge also. In regard to that charge it would appear that the most that could be said of the advertisement is that appellant states that he makes good dental plates. That is clearly not sufficient to support a charge of professional misconduct, for it must be remembered that the Legislature carefully refrained from prohibit-

ing a dentist from all manner of advertising. He must, however, restrict his advertising. And to say such advertising as is here involved, is a claim of professional superiority, would amount in practically all instances, to prohibiting all advertising except possibly such as is of a strictly educational nature, and even such advertising would necessarily have to be disassociated with the dentist doing the advertising. That would manifestly be an unwarranted extension of the Dental Practice Act. It is quite clear that it may be plausibly asserted that statements by a dentist in his advertisements, suggesting that he be patronized, that he does certain work, or that his work is of a certain quality and the like, are all pregnant with the inference that he is to be chosen in preference to other dentists, and therefore has professional superiority. When he asks you to patronize him, the inference is that you should not go elsewhere; when he describes the quality of his work, he implies that elsewhere the work will be inferior. There must therefore be a convincing showing of a direct claim of professional superiority of the advertising dentist as compared with other dentists to justify disciplinary action.

The majority opinion makes the following statement:

"The evidence in the instant case included the advertisement itself and the testimony of appellant. If either the advertisement or the testimony offers any substantial support for the conclusion of the court below, the judgment must be affirmed. Appellant's argument is, in substance, that the advertising statements admittedly made by him do not constitute a violation of the terms of the statute. The language used by the appellant and the circumstances under which it was used are admitted. *The application of the legal standard prescribed by the statute to the admitted facts requires a construction of the statutory provisions upon which both the Board and the court below were in agreement.*" I may be obtuse, but it is not clear to my mind what the author of the majority opinion meant by the italicized portion of the above-quoted statement. The fact is, that the majority opinion accepted the conclusion reached by the Dental Board and the trial court that the above-quoted advertisement violated subdivisions 11 and 17 of Section 1680 of the Dental Practice Act prohibiting advertising statements of a character tending to deceive or mislead the public and advertising

to guarantee dental service, but the majority opinion apparently does not agree with the conclusion reached by the Dental Board and the trial court that said advertisement violated subdivision 12 of said section which prohibits advertising of professional superiority or the performance of professional service in a superior manner. It would seem to me that if this court is bound by the conclusion reached by the Dental Board and the trial court upon any of the issues, it should be bound by their conclusion as to all of the issues. I make this observation merely for the purpose of demonstrating the unsoundness of the premise upon which the conclusion reached in the majority opinion is based.

The appeal of this case was first presented to the District Court of Appeal of the Fourth Appellate District and was decided by that court. (103 Pac. (2d) 442.) In a very able opinion prepared by Mr. Justice Marks of that court, the same conclusion was reached which I have announced in this opinion, but a hearing was granted by this court for the purpose of giving further consideration to the problems involved. To my mind there can be no doubt of the soundness of the reasoning upon which the conclusion of the District Court of Appeal was based, and for the reason stated therein and in the foregoing opinion, the judgment of the trial court should be reversed with directions that it issue a writ of mandate requiring the respondent Board of Dental Examiners of California to reinstate appellant's license as prayed for in his petition.

A petition for a rehearing was denied April 3, 1941. Carter, J., voted for a rehearing.